ACCEPTED
03-14-00519-CV
3972059
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/30/2015 4:13:46 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00519-CV

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/30/2015 4:13:46 PM
JEFFREY D. KYLE
Clerk

**JOHN THOMAS AIKEN**,
Appellant

v.

**ANGELIQUE S. NAYLOR and
WELLS FARGO BANK, N.A.**,
Appellees

ON APPEAL FROM THE 250TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS

TRIAL COURT CAUSE NO. D-1-GN-13-003527

BRIEF OF APPELLEE ANGELIQUE S. NAYLOR

Russell Frost
State Bar No. 24063687
Law Office of Russell Frost
711 West 7th Street
Austin, Texas  78701
Tel: (512) 225-5590
Fax: (512) 692-2895
rfrost@russellfrostlaw.com

ATTORNEY FOR APPELLEE
ANGELIQUE S. NAYLOR

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................ii

INDEX OF AUTHORITIES..............................................................................iv

STATEMENT OF THE CASE..........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

ISSUES PRESENTED .......................................................................................ix

STATEMENT OF FACTS................................................................................. 1

SUMMARY OF THE ARGUMENT ........................................................... 3

ARGUMENT....................................................................................................... 5

    A.    Standard of Review – Texas Rule of Civil Procedure 166a.................. 5

    B.    Aiken failed to present to the trial court, and raises for the first time on appeal, his contentions that the trial court erred in granting summary judgment because the relief sought was in excess of what Naylor was entitled to under the pleadings, and that the trial court erred in granting judgment greater than the relief requested and not based on grounds not asserted in the motion for summary judgment...5

    C.    Naylor's summary judgment motion was consistent with and supported by the claims and factual allegations asserted in her First Amended Counterclaim…...……………………………………...……….6

    D.    Aiken's claims under the Texas Debt Collections Act, the Texas Property Code, and for declaratory judgment are without merit, and therefore, the trial court did not err in granting summary judgment in favor of Naylor...................................................................................... 9

E.      There is no genuine issue of material fact as to who holds superior title to the subject property, and therefore, the trial court's grant of summary judgment in favor of Naylor is correct ................................ 13

F.      Naylor's claim for breach of contract is not barred by the statute of limitations ...................................................................................... 15

G.      Naylor is not barred by judicial estoppel from asserting a breach of contract claim under the LWOP.... ....................................................... 17

H.      Aiken's standing argument is without merit ......................................... 19

CONCLUSION AND PRAYER ........................................................................... 25

CERTIFICATE OF COMPLIANCE ..................................................................... 26

CERTIFICATE OF SERVICE .............................................................................. 27

# INDEX OF AUTHORITIES

## CASES

*Austin Nursing Ctr., Inc. v. Lovato*,
171 S.W.3d 845, 849 (Tex. 2005) ....................................................................19

*Besteman v. Pitcock*,
272 S.W.3d 777, 784 (Tex. App.—Texarkana 2008, no pet.) .........................13

*CKB & Assocs. v. Moore McCormack Petroleum, Inc.*,
809 S.W.2d 577 (Tex. App.—Dallas 1991, writ denied)..................................17

*Ethan's Glen Community Ass'n v. Kearney*,
667 S.W.2d 287 (Tex. App.—Houston [1st Dist.] 1984, no writ)......................9

*Ferguson v. Bldg. Materials Corp. of Am.*,
295 S.W.3d 642 (Tex. 2009) ...........................................................................17

*Gulf States Abrasive Manufacturing, Inc. v. Oertel*, 489 S.W.2d 184
(Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.)...........................17

*Horizon/CMS Healthcare Corp. v. Auld*,
34 S.W.3d 887 (Tex. 2000) ................................................................................7

*In re R.A.*,
417 S.W.3d 569 (Tex. App.—El Paso 2013, no pet.) .............................18, 22

*Kane v. Nat'l Union Fire Ins. Co.*,
535 F.3d 380 (5th Cir. 2008)............................................................................19

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003) ..............................................................................5

*Lopez v. Munoz, Hockema & Reed, L.L.P.*,
22 S.W.3d 857 (Tex. 2000) ..............................................................................21

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
 289 S.W.3d 844 (Tex. 2009) ...................................................................5

*McConnell v. Southside ISD*,
 858 S.W.2d 337 (Tex. 1993) ..................................................................6

*Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*,
 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied) .....20

*Nixon v. Mr. Prop. Mgmt. Co.*,
 690 S.W.2d 546 (Tex. 1985) ..................................................................5

*Nootsie Ltd. v. Williamson Cnty. Appraisal Dist.*,
 925 S.W.2d 659, 662 (Tex. 1996) .........................................................20

*Provident Life & Accident Ins. Co. v. Knott*,
 128 S.W.3d 211 (Tex. 2003) ..................................................................5

*Wells v. Dotson*,
 261 S.W.3d 275 (Tex. App.—Tyler 2008, no pet.) ...............................16

## RULES AND STATUTES

11 U.S.C. § 522(b)(2) (2012) ..................................................................20

11 U.S.C. § 554(c) (2012) .......................................................................19

TEX. CIV. PRAC. & REM. CODE ANN. ANN. § 16.035 (West 2014) ......................15

TEX. CIV. PRAC. & REM. CODE ANN. ANN. § 16.051 (West 2014) ...............12, 15

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (West 204) .........................4, 16–17

TEX. PROP. CODE ANN. § 5.062 (West 2014) ....................................... 11, 12

TEX. PROP. CODE ANN. §5.064 (West 2014) ...........................................vii, 11

TEX. PROP. CODE ANN. § 5.076 (West 2014) ..........................................vii, 11

TEX. PROP. CODE ANN. § 5.077 (West 2014)...................................................vii, 11

TEX. PROP. COD ANN. § 5.085(b) (West 2014)..............................................vii, 11

TEX. R. CIV. P. 93 ...............................................................................................20

TEX. R. CIV. P. 94 ...............................................................................................17

TEX. R. CIV. P. 166a(c) .....................................................................................5–6

TEX. R. EVID. 106 ...............................................................................................18

TEX. R. EVID. 107 ...............................................................................................18

## SESSION LAWS

Act of June 18, 2005, 79th Leg., R.S., ch. 978, §§ 2, 7(a), 2005 Tex. Gen. Laws
    3280-81, 3285 (codified at Tex. Prop. Code § 5.062).......................................11

Act of May 21, 2001, 77th Leg., R.S. ch. 693, § 1, 2001 Tex. Gen. Laws 1319
    (amended 2005) (current version at Tex. Prop. Code 5.062)............................11

## STATEMENT OF THE CASE

1.01    On October 10, 2013, Appellant John Thomas Aiken ("Aiken") filed suit against Appellee Angelique S. Naylor ("Naylor") in the 250th Judicial District of Travis County, Texas, seeking (1) quiet title to property in dispute; (2) damages for alleged violations under the Texas Debt Collections Act (hereinafter "TDCA"); (3) damages for alleged violations of the Texas Property Code §5.076, 5.077, 5.085(b), and 5.064; (4) alleged damages for Money Had Received and Unjust Enrichment; and (5) Declaratory Relief.

1.02   Naylor answered and filed counterclaims for breach of contract and declaratory relief, among other claims and remedies.

1.03   On March 24, 2014, Naylor moved for summary judgment.  In her motion, Naylor sought summary judgment on the ground that, because it is undisputed that Aiken failed to exercise his option to purchase in accordance the terms of the lease agreement (hereinafter "LWOP")—namely, the option was not evidenced by a notice in writing addressed to the Lessor, sent by registered mail to the address of the Lessor on or before April 1, 2009, or otherwise—Aiken had no claim to title of the property in question, and thus Aiken's claim to quiet title failed as a matter of law.  Naylor also requested summary judgment on her claim for breach of contract on the ground that Aiken stopped making his monthly payments to Naylor.

1.04   On June 5, 2014, the Honorable Gus Strauss rendered an order granting Naylor's motion for summary judgment.

1.05   On August 14, 2014, Judge Strauss rendered a final judgment that incorporated the order of June 5, 2014.  It is from this judgment that Aiken appeals.

**STATEMENT REGARDING ORAL ARGUMENT**

Naylor disputes the necessity for oral argument as this case involves only well-settled principles of law and facts plainly apparent from the record.

# ISSUES PRESENTED

2.01 Did the trial court correctly grant Naylor's motion for summary judgment?

2.02 Did the trial court correctly dismiss Aiken's claims for quiet title where Aiken failed to exercise his option to purchase the property in accordance with the terms of the lease and where Aiken has no other possible claim of title to the property?

2.03 Did the trial court correctly grant summary judgment on Naylor's breach of contract counterclaim where it is undisputed that Aiken failed to pay rent?

2.04 Did the trial court correctly grant summary judgment on Aiken's remaining claims because they have no basis in law or fact?

2.05 Did the trial court correctly find that Naylor's claims were not barred by the statute of limitations?

2.06 Is Naylor judicially estopped from asserting her claims in this lawsuit?

2.07 Does Naylor have standing to assert her counterclaim for breach of contract in this lawsuit?

TO THE HONORABLE COURT OF APPEALS:

**STATEMENT OF FACTS**

3.01   Naylor is the fee simple owner of real property located at 1101 Durham Drive in Austin, Travis County, Texas ("1101 Durham").  CR 133.  On or about April 30, 2004, Naylor and Aiken entered into a lease agreement with an option to purchase the property ("LWOP").  CR 133, 139-45.

3.02   Section 5 of the LWOP required Aiken to pay Naylor $189,577.58 in base rental payments, $5,000 of which was prepaid in cash and $184,577.58 of which was tendered with a promissory note ("Note") in favor of Naylor.  CR 140. In exchange, Naylor delivered possession of the property pursuant to the terms of the LWOP.  *Id.*

3.03   Paragraph 23 of the LWOP granted Aiken "the option to purchase the leased property . . . prior to April 1, 2009" so long as the option was "evidenced by a notice in writing addressed to the Lessor, sent by registered mail to the address of the Lessor . . . ."  CR 143-44.  Deed to the property was never delivered to Aiken and, instead, was held in escrow until Aiken exercised the option.  CR 133-34, 136. However, Aiken never exercised his option "by sending a notice in writing addressed to [Naylor], sent by registered mail to the address of [Naylor]" (or otherwise), nor did Aiken produce any evidence that he sent any such notice in

accordance with the terms of the contract, and the option is now expired as a matter of law. *See* CR 134.

3.04 The Note, which was prepared in conjunction with the LWOP, matured on April 30, 2009. CR 147. Pursuant to the Note, Aiken was required to pay Naylor the entire principal of the Note upon maturity. *Id.* It is undisputed that Aiken failed to make this payment to Naylor. CR 134.

3.05 To accommodate Aiken, Naylor began accepting rental payments from Aiken so that Aiken could continue to reside on the property. It is undisputed that, after July 2013, Aiken stopped making his rental payments although he continues to reside at the property. *Id.* Shortly thereafter, Naylor filed an eviction suit in the Justice Court. Aiken then filed this lawsuit to delay a ruling in the Justice Court and to continue to reside on Naylor's property without paying a dime for it.

## SUMMARY OF THE ARGUMENT

4.01 The trial court correctly granted Naylor's motion for summary judgment, and this Court should affirm that ruling.

4.02 Aiken failed to present to the trial court, and raises for the first time on appeal, his contentions that the trial court erred in granting summary judgment because the relief sought was in excess of what Naylor was entitled to under the pleadings. This argument was not preserved and may not be considered as grounds for reversal.

4.03 Contrary to Aiken's claim that the summary judgment relief requested by Naylor was not supported by her pleadings, the relief requested by Naylor is identical to the express language of her First Amended Counterclaim. CR 108-12. By basing her summary judgment arguments on the claims and factual allegations made in her counterclaim, Naylor gave Aiken "fair notice" of her arguments and her requested relief.

4.04 The trial court correctly granted Naylor a total summary judgment rather than the partial summary judgment because Naylor clearly and expressly argued that "all" of Aiken's causes of action failed as a matter of law. CR 129-30.

4.05 There was no genuine issue of material fact as to who holds superior title to the property in question because Aiken never exercised his option to

purchase the property in accordance with the terms of the LWOP. CR 133-34. That option has expired, and Aiken has no other possible claim to title of the property.

4.06   Naylor's counterclaims are not barred by the statute of limitations. The cause of action for failure to pay rents accrued in August 2013 when Aiken stopped making rental payments, and the limitations period for breach of contract is four years. CR 134. Alternatively, even if Naylor's counterclaims had been untimely, they were revived under section 16.069 of the Texas Civil Practice and Remedies Code when Aiken filed his lawsuit regarding the same transaction on which Naylor's counterclaims are based, and Naylor filed her counterclaim within 30 days after the date on which her answer was required.

4.07   Aiken waived his judicial estoppel argument by failing to plead it to the trial court.

4.08   Naylor does not lack standing or capacity to pursue her counterclaim for breach of contract in this lawsuit.

# ARGUMENTS AND AUTHORITIES

## A.  Standard of Review – Texas Rule of Civil Procedure 166a.

5.01   A trial court's decision to grant summary judgment is reviewed de novo using the standards for summary judgment set forth in Texas Rule of Civil Procedure 166a. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003).  A court of appeals must determine whether the successful movant carried its burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

5.02   Appellate review of a no-evidence summary judgment is governed by the same legal sufficiency standard as directed verdicts.  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003).

## B.  **Aiken failed to present to the trial court, and raises for the first time on appeal, his contentions that the trial court erred in granting summary judgment because the relief sought was in excess of what Naylor was entitled to under the pleadings, and therefore this argument may not be considered as grounds for reversal**.

5.03  In summary judgment practice, the non-movant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement to summary judgment.  Issues not so expressly presented to

the trial shall not be considered on appeal as grounds for reversal. TEX. R. CIV. P. 166a(c). *McConnell v. Southside ISD,* 858 S.W.2d 337, 353 (Tex.1993). Here, Aiken did not present the cited issues to the trial court, and therefore, they are not grounds for reversal.

**C.    Naylor's summary judgment motion was consistent with and supported by the claims and factual allegations asserted in her First Amended Counterclaim.**

5.04    Aiken's first argument is that Naylor's summary judgment motion was not supported by her pleadings. As stated above, Aiken raises this issue for the first time on appeal. In addition, Aiken claims that, while Naylor sought summary judgment on her breach of contract claim on the ground that Aiken failed to make his payments under the LWOP, such facts were not alleged in Naylor's pleadings.

5.05    Contrary to Aiken's assertion, Naylor clearly and expressly alleges that Aiken stopped making payments under the LWOP in paragraphs 10 and 11 of Naylor's First Amended Counterclaim: "To accommodate Plaintiff, Naylor began accepting rental payments from Plaintiff so that he could continue to lease the Property. . . . On or about July 2013, Plaintiff stopped making payments, and Naylor filed an eviction suit in the Justice Court." CR 109. Then, in paragraph 12 of her First Amended Counterclaim, Naylor expressly incorporated these factual

allegations into her allegations regarding her breach of contract claim. CR 109-10. Accordingly, the factual allegations on which Naylor's summary judgment motion was based were expressly alleged in her pleadings, and Aiken's argument is without merit and should be rejected.

5.06 Moreover, Texas follows the "fair notice" standard for pleadings. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000) (quoting *Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57, 60 (Tex. App.—Tyler 1995, writ denied). The relevant consideration under this standard is "whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Id*. The purpose of the fair notice pleading is to ensure that the opposing party has enough information to enable it to prepare a defense against the claim. *Id.* at 897 (citing *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)). When the opposing party does not specially except to the pleadings, the court should review the pleadings liberally in favor of the pleader. *Id.* Here, Naylor's pleading provided Aiken with adequate notice as to the nature and issues of the controversy. Further, Aiken did not specially except to Naylor's pleadings, and therefore, this Court must construe Naylor's pleadings liberally in favor of Naylor. *Id.* For these reasons, Aiken had fair and adequate notice of the facts

upon which Naylor's claims were based and the trial court's grant of summary judgment in favor of Naylor is correct.

5.07  Aiken also argues that Naylor's request in her motion for declaratory judgment—that no legitimate title dispute exists and that Naylor is not precluded from pursuing her eviction lawsuit in the Justice Court—were not requested in her pleadings.  *See* Appellant's Brief ¶ 5.08.  Contrary to Aiken's assertion, in paragraph 23 of her First Amended Counterclaim, Naylor expressly requested this exact relief:

> Naylor requests that declaratory judgment be rendered under Chapter 37 of the Texas Civil Practice and Remedies Code as follows: . . . (c) declaring the relationship of Naylor and [Aiken] is now that of Lessor and Lessee, <u>no legitimate title dispute exists, and Naylor is not precluded to pursue her eviction action in the Justice Court.</u>

CR 111 (emphasis added).  Again, Aiken's argument  is refuted by the clear, express language of Naylor's pleadings.  Therefore, the Court should reject Aiken's argument and affirm the trial court's ruling.

5.08  Finally, Aiken argues that the trial court erred by enjoining Aiken from "asserting any claim or interest in or to the Property or any part of it," claiming that the Court lacks authority for this order and that Naylor did not plead for such relief.  *See* Appellant's Brief ¶ 5.14.  Contrary to Aiken's assertion, "[t]he right to possession necessarily follows the adjudication of title, and the right to

such possession may be awarded in the title action . . . ." *Ethan's Glen Community Ass'n v. Kearney*, 667 S.W.2d 287, 290 (Tex. App.—Houston [1 Dist.] 1984, no writ). Thus, Appellant's own assertion of a title contest opened the door to the issue of possession, and therefore, it is appropriate and necessary to include in the final judgment an order on the issue of possession. *See Kearney*, 667 S.W.2d at 290. Any order to the contrary would render moot the Court's title determination.

5.09 In conclusion, as set forth above, Naylor's motion for summary judgment is entirely consistent with Naylor's pleadings and, in fact, tracks the express language of those pleadings. Aiken's argument that Naylor's summary judgment was not supported by the pleadings is without any basis and offers this Court no reason to reverse the trial court's judgment.

**D. Aiken's claims under the Texas Debt Collections Act, under the Texas Property Code, and for declaratory judgment are without merit, and therefore, the trial court did not err in granting summary judgment in favor of Naylor.**

5.10 Aiken next argues that Naylor was entitled to only a partial summary judgment because the motion did not specifically address some of Aiken's claims or Naylor's counterclaim for "breach of the lease agreement." *See* Appellant's Brief ¶ 5.12. First, with regard to Aiken's claims, Naylor's motion for summary judgment clearly and expressly argued that judgment should be granted on <u>all</u> of Aiken's claims: "As a result, Plaintiff's option to purchase expired, and Plaintiff is

without any legal or equitable claim to title. For this reason, <u>all of Plaintiff's claims are without merit</u>, he is merely a lessee, and <u>Naylor is entitled to a no-evidence summary judgment on Plaintiff's claims</u>." CR 129-30 (emphasis added). For this reason, Aiken's argument fails.

5.11 Next, with respect to Aiken's Debt Collection claim, Naylor moved for traditional and no-evidence summary judgment based on her argument that Aiken's title contest is without merit, she owns 1101 Durham, and Aiken is merely a lessee. CR 127-30. Consequentially, the trial court affirmed her argument and ruled that the sale never occurred because Aiken failed to exercise his option. CR 407-09. If the sale never occurred, no debt exists, and Aiken is precluded from establishing any of the elements to his Debt Collection claim, and thus Naylor is entitled to summary judgment on that claim. In any event, Aiken provided no evidence in support of his claim. For these reasons, the trial court did not err in granting summary judgment in favor of Naylor with respect to Aiken's Debt Collections claim.

5.12 Next, with respect to Aiken's Property Code violations, each of the violations Aiken claims is predicated upon the existence of an executory contract. *See* TEX. PROP. CODE § 5.064, 5.076, 5.077, 5.085(b). The current version of section 5.062(a)(2) of the Property Code states that "an option to purchase real

property that includes or is combined or executed concurrently with a residential lease agreement" is considered an executory contract for conveyance purposes. TEX. PROP. CODE § 5.062(a)(2). However, that section, amended in 2005, applies only to "an executory contract for conveyance entered into on or after January 1, 2006." Act of June 18, 2005, 79th Leg., R.S., ch. 978, §§ 2, 7(a), 2005 Tex. Gen. Laws 3280-81, 3285 (codified at Tex. Prop. Code § 5.062). *See Exhibit C*. In this case, the parties executed the LWOP on or about April 30, 2004, over two years prior to the applicability of the law upon which Aiken relies. The version of the law in effect for purposes of the LWOP in this case makes no similar provision. Act of May 21, 2001, 77th Leg., R.S. ch. 693, § 1, 2001 Tex. Gen. Laws 1319 (amended 2005) (current version at Tex. Prop. Code 5.062). *See Exhibit D*. Therefore, the facts here fail to establish the existence of an executory contract, chapter 5 of the Property Code is not applicable, and the trial court did not err in granting summary judgment in favor of Naylor on Aiken's various allegations of Property Code violations.

5.13 Alternatively, at the time Aiken asserted his claims under the Property Code on October 10, 2013, the option to purchase under the LWOP had already expired under its own terms, rendering the contact—at best—a mere lease agreement. Thus, the LWOP did not meet the criteria of even the current version

of section 5.062 by the time Aiken asserted his claim. Therefore, it was not an executory contract, and chapter 5 of the Property code is not applicable.

5.14 Alternatively, Aiken's Property Code claims are subject to a four-year statute of limitations, and therefore, would be subject to the affirmative defense. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2014). For any of these reasons, the trial court did not err in awarding Naylor summary judgment on Aiken's claims of Property Code violations.

5.15 Next, with respect to Naylor's counterclaim for breach of contract, Naylor's motion for summary judgment specifically addresses that counterclaim. *See* CR 109-10, 130. Naylor did not have a separate counterclaim for "breach of the lease agreement," and thus Aiken's argument regarding this alleged claim is without any basis whatsoever. Moreover, to the extent that Naylor's breach of contract claim was based on Aiken's failure to make payments, Naylor's motion for summary judgment expressly addressed this allegation.

5.16 In summary, based on Aiken's failure to establish a claim to title, the pleadings on file, and the uncontroverted summary judgment evidence attached to Nalyor's Motion for Summary Judgment, Aiken's claims are <u>all</u> without merit, and therefore, the trial court correctly granted summary judgment in favor of Naylor.

**E.** **There is no genuine issue of material fact as to who holds superior title to the subject property, and therefore, the trial court's grant of summary judgment in favor of Naylor is correct.**

5.17 Aiken argues that the trial court should not have granted summary judgment because there were fact issues as to who holds superior title to the property in question. *See* Appellant's Brief ¶ 5.17. Contrary to his assertion, there is no genuine issue of material fact as to who holds superior title to the property. Unless and until Aiken successfully exercised his option to purchase, Naylor retained superior title to the property. *Cf. Besteman v. Pitcock*, 272 S.W.3d 777, 784 (Tex. App.—Texarkana 2008, no pet.) (holding option period expired and reversing trial court's order of specific performance). No genuine issue of material fact exists as to whether Aiken exercised his option to purchase or whether the option expired because it is undisputed that the option was not evidenced by a notice in writing addressed to the Lessor, sent by registered mail to the address of the Lessor on or before April 1, 2009. *Cf. id.*; CR 134. Moreover, Aiken has no other possible claim to title other than through the option that he failed to exercise. Therefore, no genuine issue of material fact exists as to who holds superior title to the property, and the trial court did not err in granting summary judgment in favor of Naylor on this issue.

5.18　Next, no genuine issue of material fact exists as to whether execution of the LWOP terminated the lease. Under section 5 of the LWOP, until Aiken tendered full payment of the principal balance of the Note, rents under the lease were due to Naylor. *See* CR 140. Since there is no genuine issue of material fact as to Aiken's failure to tender the principal balance of the Note, the lease remained in effect. It follows that no genuine issue of material fact exists as to whether the execution of the LWOP terminated the lease, and the trial court did not err in granting summary judgment in favor of Naylor.

5.19　Further, to the extent that Aiken claims that that he had a claim to title because he received a deed from Naylor for the property, that assertion is completely unsupported by the record. To the contrary, no deed or deed of trust was ever given to, delivered, or otherwise tendered to Aiken. Instead, pursuant to the terms of the parties' Document Escrow Agreement, the deed to the property was held in escrow pending Aiken's exercise of his option to purchase. CR 133-34, 136. Since Aiken plainly failed to exercise his option, he never received the deed, he was unable (and thus failed) to produce the original deed to the trial court, and therefore, the undelivered deed cannot form the basis of any claim to title of the property by Aiken. In sum, there is no genuine issue of material fact as to the title of the property because Aiken failed to exercise his option to purchase and has

no other possible claim of title to the property, and therefore, the trial court's summary judgment was correct.

**F.     Naylor's claims for breach of contract and declaratory judgment are not barred by the statute of limitations.**

5.20   Aiken next argues that Naylor's claims are barred by limitations. *See* Appellant's Brief ¶¶ 5.21—.24.  This argument is without merit.[1]  Naylor's breach of contract claim regarding the failure to pay rents did not accrue until Aiken refused to pay rents after July 2013.  CR 134.  The applicable limitations period is four years.  TEX. CIV. PRAC. & REM. CODE §16.051.  Here, Naylor filed her counterclaim on October 13, 2013, and her first amended counterclaim on March 19, 2014, well within the four-year period.  Therefore, her claim is not barred by limitations, and Aiken's argument must be rejected.

5.21  Alternatively, section 16.069 of the Texas Civil Practice and Remedies Code provides as follows:

---

[1]     The statute cited by appellant—section 16.035 of the Texas Civil Practice and Remedies Code—applies to a suit for the recovery of real property under a real property lien or the foreclosure of a real property lien.  TEX. CIV. PRAC. & REM. CODE § 16.035.  Naylor's suit does not attempt to recover real property under a real property lien or foreclose on a real property lien.  Instead, her suit seeks contractual damages and a declaratory judgment.  CR 108-23.  Also, the statute on its face does not purport to apply to appellee's counterclaim for a declaratory judgment.

> If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

TEX. CIV. PRAC. & REM. CODE § 16.069(a). In order for a counterclaim to be revived, the defendant must file the counterclaim no later than 30 days after the answer is due. *See id.* § 16.069(b). The purpose of this section is to prevent a party from waiting until an opponent's valid claim that arises out of the same transaction or occurrence is time-barred before asserting its own claim.[2] *Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex. App. Tyler 2008, no pet.) (citing *Hobbs Trailers v. JT Arnett Grain Co., Inc.*, 560S.W.2d 85, 88-89 (Tex. 1977).

5.22 Here, Aiken filed his Original Petition on October 10, 2013, and an Amended Petition on October 14, 2013. CR 4, 25. In these pleadings, Aiken asserted claims related to the parties' transaction regarding the property in question, which is the same transaction upon which Naylor's breach of contract claim is based. CR 5-14, 26-33, 41. Naylor then filed her breach of contract counterclaim in the same document as her Original Answer on November 13, 2013, which satisfies the 30-day requirement of section 16.069(b). CR 41. Since

---

[2] Aiken attempted to get away with exactly the type of conduct this law was created to protect against: waiting out your opponent's valid claim in order to catch a major windfall.

Naylor's claims were revived under section 16.069, they were not barred by limitations, and the trial court did not err in granting Naylor summary judgment on her breach of contract counterclaim.

## G. Aiken's judicial estoppel argument was not specifically pled and therefore is waived.

5.23    Aiken next argues that Naylor should be judicially estopped from asserting any claims related to the parties' transactions because she did not disclose information related to the transactions in her 2010 bankruptcy proceedings. *See* Appellant's Brief ¶¶ 5.25—.35. Even assuming these allegations are true, Aiken failed to plead the affirmative defense, and therefore, the defense is waived.[3] TEX. R. CIV. P. 94; *CKB & Assocs. v. Moore McCormack Petroleum, Inc.*, 809 S.W.2d 577, 584 (Tex. App.—Dallas 1991, writ denied) ("Estoppel is an affirmative defense. It is lost if not specifically pleaded."); *Gulf States Abrasive Manufacturing, Inc. v. Oertel*, 489 S.W.2d 184, 188 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.) ("Judicial estoppel is an affirmative defense, and must be specially pleaded.").

---

[3]    Even if Aiken had not waived the defense, judicial estoppel mandates that an unfair advantage be sought by the party being estopped. See *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009). Surely it cannot be argued that a landlord asserting her contractual rights in defending a claim of title by her tenant is seeking an unfair advantage against that tenant who is seeking a free house.

5.24 Alternatively, judicial estoppel does not apply. First, there was no asset to disclose at the time of the filing of the case: the LWOP expired by its own terms in 2009 prior to the filing of the bankruptcy case by Naylor in 2010 and, therefore, Naylor had, or was entitled to, sole and undisputed possession of 1101 Durham at the time of the filing of the case. Second, even if there was an asset to disclose, the issue was resolved when, in December 2013, Naylor voluntarily re-opened her bankruptcy case and disclosed the literally worthless "asset." Naylor filed amended schedules in her case—specifically Schedules B and C—and, in an "abundance of caution," *see Exhibit A* at 5, disclosed the worthless asset. Naylor now asks this Court to take judicial notice of the balance of the records from her bankruptcy proceedings including the amended schedules, *see Exhibit A*, and the docket report, *see Exhibit B*, for Cause No. 10-12009 filed in the United States Bankruptcy Court, Western District of Texas, Austin Division. *In re R.A.*, 417 S.W.3d 569, 576 (Tex. App.—El Paso 2013, no pet.); *cf.* TEX. R. EVID. 106, 107 (rule of optional completeness).

5.25 Third, the value of the asset is unequivocally zero. This is reflected in Naylor's amended bankruptcy schedules, *see Exhibit A* at 5, and plainly admitted by Aiken, *see* CR 28 (Aiken states in live pleadings he "continued to mistakenly make payments" on the property after April 2009) *and* CR 158 (Aiken refers to

LWOP as "a legal fiction" that "no longer exists"). Moreover, once the case was reopened by the Bankruptcy Court and the amended schedules filed, the Chapter 7 Trustee concluded that the value of the claim was insignificant, which is evidenced by the re-closing of the case on January 23, 2014, without issue. *See Exhibit B* at 15. In other words, the Bankruptcy Trustee abandoned in favor of Naylor any interest in the asset the Bankruptcy Estate may have had. *See* 11 U.S.C. 554(c) (2012). In summary, Aiken's judicial estoppel argument, even if preserved, is without merit.

## H. Naylor has standing and capacity to assert her breach of contract claim.

5.26 Aiken's final argument is that Naylor lacks standing to claim breach of contract because she did not disclose the note, lease agreement, and Aiken's payments in her 2010 bankruptcy case. Citing *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008), Aiken proposes that only the Bankruptcy Trustee has standing to assert the breach of contract claim. Again, Aiken's argument is without merit.

5.27 First, Aiken confuses the concepts of standing and capacity. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome, whereas the issue of capacity is conceived of as a procedural issue dealing with the personal

qualifications of a party to litigate. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy. *Id.* at 848–49. Standing is a component of subject matter jurisdiction and can never be waived. *Id.* at 849. Unlike standing, however, "an argument that an opposing party does not have the capacity to participate in a suit can be waived." *Nootsie Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) (citing Tex. R. Civ. P. 93).

5.28   Here, Naylor—the named party in Aiken's own lawsuit (as opposed to the Bankruptcy Trustee who Aiken claims has exclusive interest in 1101 Durham)—is personally aggrieved by Aiken's attempt to swindle her out of her property. Thus, Aiken for the first time raises only an issue of capacity—not an issue of standing. Because he raises this argument for the first time on appeal, it is waived. *Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("A party who fails to raise the issue of capacity through a verified plea waives that issue at trial and on appeal.").

5.29 Even if Aiken's argument raises an issue of standing, which it does not, Aiken's own evidence demonstrates Naylor plainly listed the 1101 Durham and the purchase money loan thereon on Schedules A and D, respectively, of her Bankruptcy Petition Schedules. CR 212, 223. Further, 1101 Durham is property exempted from the Bankruptcy Estate pursuant to title 11, section 522(b)(2) of the United States Code. CR 219; 11 U.S.C. § 522(b)(2) (2012). Thus, this property is not part of the Bankruptcy Estate and not subject to the control of the Bankruptcy Trustee. Second, with regard to the Note, Naylor makes no attempt to enforce the Note against Aiken in these proceedings or otherwise, and therefore, whether the Note (assuming it is enforceable) was listed on the bankruptcy schedules is moot. Third, Aiken is estopped from arguing the lease agreement should have been listed on the bankruptcy schedules by his own live pleadings and arguments, which plainly assert the LWOP is worthless. *Cf. Lopez v Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ("Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken."). Specifically, Aiken's live pleadings state Aiken "continued to <u>mistakenly</u> make payments" on the property after April 2009. CR 28 (emphasis added). Further, Aiken calls the LWOP "a legal fiction" that "no longer exists . . . ." CR 158. In other words, Aiken himself admits the LWOP asset is worthless. For

Aiken to now assert for the first time that Naylor lacks standing based on alleged facts he himself previously denied—namely, that the LWOP has value—spits in the face of justice and puts Naylor at a disadvantage and, therefore, must be precluded by estoppel.[4] For these reasons, Naylor should not be denied standing to assert her breach of contract claim against Aiken.

5.30 Alternatively, as discussed above, there was no asset to disclose at the time Naylor filed her bankruptcy because the LWOP terminated by its own terms in 2009 prior to the filing of the bankruptcy case in 2010.

5.31 Alternatively, even if there was an asset to disclose, the issue was resolved when, in December 2013, Naylor re-opened her bankruptcy case and disclosed the literally worthless "asset." *See Exhibit A* at 5.[5] Specifically, her bankruptcy records reflect a voluntary reopening of her bankruptcy case, an amended filing disclosing the LWOP agreement only in "an abundance of caution," and a subsequent closing of the bankruptcy proceedings without any

---

[4] The record is void of any evidence showing that, at the time Naylor filed for bankruptcy, she was receiving rental payments from Aiken. In any event, Naylor has not sought recovery of past rents knowing such a claim is void of value, and therefore, whether Naylor listed the rental payments on her bankruptcy schedules is moot.

[5] Again, Naylor asks this Court to take judicial notice of the balance of the records from her bankruptcy proceedings, Cause No. 10-12009 filed in the United States Bankruptcy Court, Western District of Texas, Austin Division, which Naylor filed prior to Aiken ever raising an issue of standing. *In re R.A.*, 417 S.W.3d 569, 576 (Tex. App.—El Paso 2013, no pet.) (generally, appellate courts take judicial notice of facts outside the record only to determine jurisdiction).

substantive action taken by that Court or the Bankruptcy Trustee. More specifically, Naylor's amended filing in that matter describes the asset as follows:

> Expired Lease with an option to purchase with John Thomas Aiken in the form of a "Wally Wrap" dated April 30, 2004. Contract expired by its own terms on April 30, 2009 as Aiken was unable to obtain his own financing as required by the terms of the contract prior to that time. Aiken was also in default as he had missed several payments on the property prior to that time. Although this contract expired by its own terms well prior to the filing of this case and is therefore valueless and unenforceable, it is listed here out of an abundance of caution. The real property subject to this expired lease is now owned entirely by Debtor. Debtor may have a possible claim against Aiken for the missed payments, but since so much time had passed between the expiration of the contract and the filing of the case, Debtor considers this claim to be valueless, too.

*See Exhibit A*. Thus, contrary to Aiken's position, the asset was disclosed even though all parties—including Aiken—agreed it was worthless.

5.32 Alternatively, even if Naylor did not have standing to assert the breach of contract claim in her original counterclaims, filed November 13, 2013, she certainly had standing after her bankruptcy schedules were amended December 18, 2013, and the bankruptcy case re-closed January 23, 2014. To be sure, on March 19, 2014, Naylor reasserted her breach of contract claim by filing her First Amended Counterclaim. CR 108.

5.33 Alternatively, there is at best a fact issue with regard Naylor's standing to sue for breach of contract on the LWOP, and this Court should remand

23

this sole issue to the trial court to make findings of fact regarding Naylor's capacity to file suit and otherwise affirm the judgment of the trial court.

## CONCLUSION AND PRAYER

For the reasons stated above, Appellee respectfully requests that this Court (1) affirm the trial court's Final Judgment, including the trial court's awards of attorneys' fees, and (2) grant Appellee such other and further relief, either at law or in equity, to which she is entitled.

Respectfully submitted,


/s/ Russell Frost
Russell Frost
State Bar No. 24063687
Law Office of Russell Frost
711 West 7th Street
Austin, Texas  78701
Tel: (512) 225-5590
Fax: (512) 692-2895
rfrost@russellfrostlaw.com
ATTORNEY FOR APPELLEE
ANGELIQUE S. NAYLOR

# CERTIFICATE OF COMPLIANCE

I hereby certify that Appellee's Brief complies with the word count limit of Texas Rule of Appellate Procedure 9.4(i)(2)(B). Excluding the contents listed in Texas Rule of Appellate Procedure 9.4(i)(1), this Brief contains 5481 words, as counted by Microsoft Word.

/s/ Russell Frost
Russell Frost

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of January, 2015, a true and correct copy of the above and foregoing was forwarded to all counsel of record in accordance with the Texas Rules of Civil and Appellate Procedure:

WILLIAM B. GAMMON, SBN: 07611280
KARLA HUERTAS, SBN: 24087765
GAMMON LAW OFFICE, PLLC.
COUNSEL FOR APPELLANT
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279

/s/ Russell Frost
Russell Frost

# APPENDIX



**EXHIBIT**
**A**

In re **Angelique Stephanie Naylor**

Case No. **10-12009**

(if known)

*AMENDED 12/18/2013*
## SCHEDULE B - PERSONAL PROPERTY

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand. | | Cash on hand | - | $57.65 |
| 2. Checking, savings or other finan-cial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and home-stead associations, or credit unions, brokerage houses, or cooperatives. | | UFCU Checking. The amount includes $367.00 that was an advance by debtor's employer for travel expenses. | - | $560.67 |
| | | Chase Checking Account | - | $403.00 |
| 3. Security deposits with public util-ities, telephone companies, land-lords, and others. | | Texas Gas Service Security Deposit | - | $50.00 |
| | | City of Austin Security Deposit | - | $100.00 |
| 4. Household goods and furnishings, including audio, video and computer equipment. | | Furniture | - | $800.00 |
| | | Refrigerator | - | $500.00 |
| | | Dishwasher | - | $100.00 |
| | | Minor Appliances, Microwave, Toaster, Etc. | - | $50.00 |
| | | Television | - | $400.00 |
| | | Stereo/CD Player | - | $100.00 |
| | | VCR/DVD Player | - | $300.00 |
| | | Computer and Equipment | - | $150.00 |
| | | Household Goods - disshes, utensils, food, etc. | - | $250.00 |
| | | Couch and Entertainment Center | - | $1,700.00 |

In re **Angelique Stephanie Naylor**

Case No. **10-12009**

(if known)

*AMENDED 12/18/2013*
## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 1*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | Clothing | - | $500.00 |
| 7. Furs and jewelry. | | Jewelry | - | $500.00 |
| 8. Firearms and sports, photo-graphic, and other hobby equipment. | | Firearm | - | $250.00 |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Prudential Insurance Policy | - | $870.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | 401K - Work Debtor estimates that there is less than $400.00 currently in the 401k account. Contributions to date this 401k account per debtor's paystubs indicate that Debtor has contribuated $201.35 YTD. Debtor had no contributions to this 401k pursuant to paystubs from previous year. | - | $400.00 |

In re **Angelique Stephanie Naylor**

Case No. **10-12009**

(if known)

*AMENDED 12/18/2013*
## SCHEDULE B - PERSONAL PROPERTY
Continuation Sheet No. 2

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | Ownership interest in 1227 Paso Hondo Limited Liability Company. Sole memeber of LLC. No assets | - | $0.00 |
| | | Ownership interest in 510 Woodlawn, LLC. - Sole member in LLC. No assets | - | $0.00 |
| | | Sole shareholder in AnTex Investment Group, Inc. Sole shareholder. Entity currently holds two properties which are described below. There is no equity in this entity or the properties due to the loans taken out by the corporation against the real property it currently holds. Properties (1) 1009 N. New Braunfels Ave., San Antonio, TX. This property's current value per the Bexar CAD is $53,440.00 (2) 307 Florida, San Antonio, TX. This property's current value on the Bexar CAD is $105,760. | - | $0.00 |
| | | Ownership interest in Banget, LLC. Debtor owns a 50% membership interest in Banget along with Debtor's former spouse, Sabina Daly. This LLC holds an interest in SoCo Lofts, LLC, which is currently in Chapter 11 bankruptcy in this Court. | - | $0.00 |
| | | Ownership interest in Realty World & Home Investments. LLC. Debtor is sole member in the LLC. No assets | - | $0.00 |
| | | Ownership interest in Retired Mom, LLC. Debtor is sole member in the LLC. No assets | - | $0.00 |
| | | Ownership interest in Timeshare Village, LLC. Debtor is sole member in LLC. LLC has no other assets. | - | $0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |

In re **Angelique Stephanie Naylor**

Case No. **10-12009**
(if known)

*AMENDED 12/18/2013*
## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 3*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | Judgment obtained by Debtor against Tory C. Ketter in Cause No. J-4-SC-10-007975. Obtained in Travis County Justice of the Peace, Precinct 4 | - | $976.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |

In re  **Angelique Stephanie Naylor**                                     Case No.  **10-12009**
                                                                                      (if known)

*AMENDED 12/18/2013*
## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 4*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |

In re  **Angelique Stephanie Naylor**                          Case No.  **10-12009**

(if known)

*AMENDED 12/18/2013*
## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 5*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 35. Other personal property of any kind not already listed. Itemize. | | Expired Lease with an option to purchase with John Thomas Aiken in the form of a "Wally Wrap" dated April 30, 2004. Contract expired by its own terms on April 30, 2009 as Aiken was unable to obtain his own financing as required by the terms of the contract prior to that time.  Aiken was also in default as he had missed several payments on the property prior to that time.  Although this contract expired by its own terms well prior to the filing of this case and is therefore valueless and unenforceable, it is listed here out of an abundance of caution. The real property subject to this expired lease is now owned entriely by Debtor.<br>Debtor may have a possible claim against Aiken for the missed payments, but since so much time had passed between the expiration of the contract and the filing of the case, Debtor considers this claim to be valueless, too. | - | $0.00 |

_____5_____ continuation sheets attached

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules.)

**Total >**          **$9,017.32**

In re  **Angelique Stephanie Naylor**                              Case No.   **10-12009**

                                                                      (If known)

*AMENDED 12/18/2013*
# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)

☐ Check if debtor claims a homestead exemption that exceeds $146,450.*

☑ 11 U.S.C. § 522(b)(2)
☐ 11 U.S.C. § 522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Homestead 1101 Durham Drive, Austin, TX 78753 | 11 U.S.C. § 522(d)(1) | $292.00 | $166,717.00 |
| Cash on hand | 11 U.S.C. § 522(d)(5) | $57.65 | $57.65 |
| UFCU Checking. The amount includes $367.00 that was an advance by debtor's employer for travel expenses. | 11 U.S.C. § 522(d)(5) | $560.67 | $560.67 |
| Chase Checking Account | 11 U.S.C. § 522(d)(5) | $403.00 | $403.00 |
| Texas Gas Service Security Deposit | 11 U.S.C. § 522(d)(5) | $50.00 | $50.00 |
| City of Austin Security Deposit | 11 U.S.C. § 522(d)(5) | $100.00 | $100.00 |
| Furniture | 11 U.S.C. § 522(d)(3) | $550.00 | $800.00 |
|  | 11 U.S.C. § 522(d)(5) | $250.00 |  |
| Refrigerator | 11 U.S.C. § 522(d)(3) | $500.00 | $500.00 |
| Dishwasher | 11 U.S.C. § 522(d)(3) | $100.00 | $100.00 |
| Minor Appliances, Microwave, Toaster, Etc. | 11 U.S.C. § 522(d)(3) | $50.00 | $50.00 |
| Television | 11 U.S.C. § 522(d)(3) | $400.00 | $400.00 |
| Stereo/CD Player | 11 U.S.C. § 522(d)(3) | $100.00 | $100.00 |
| * Amount subject to adjustment on 4/1/13 and every three years thereafter with respect to cases commenced on or after the date of adjustment. | | $3,413.32 | $169,838.32 |

In re  **Angelique Stephanie Naylor**

Case No.  **10-12009**

(If known)

*AMENDED 12/18/2013*
## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

*Continuation Sheet No. 1*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| VCR/DVD Player | 11 U.S.C. § 522(d)(3) | $300.00 | $300.00 |
| Computer and Equipment | 11 U.S.C. § 522(d)(3) | $150.00 | $150.00 |
| Household Goods - disshes, utensils, food, etc. | 11 U.S.C. § 522(d)(3) | $250.00 | $250.00 |
| Couch and Entertainment Center | 11 U.S.C. § 522(d)(3) | $550.00 | $1,700.00 |
| | 11 U.S.C. § 522(d)(5) | $1,150.00 | |
| Clothing | 11 U.S.C. § 522(d)(3) | $500.00 | $500.00 |
| Jewelry | 11 U.S.C. § 522(d)(5) | $500.00 | $500.00 |
| Firearm | 11 U.S.C. § 522(d)(5) | $250.00 | $250.00 |
| Prudential Insurance Policy | 11 U.S.C. § 522(d)(7) | $870.00 | $870.00 |
| 401K - Work<br>Debtor estimates that there is less than $400.00 currently in the 401k account. Contributions to date this 401k account per debtor's paystubs indicate that Debtor has contribuated $201.35 YTD. Debtor had no contributions to this 401k pursuant to paystubs from previous year. | 11 U.S.C. § 522(d)(5) | $400.00 | $400.00 |
| Judgment obtained by Debtor against Tory C. Ketter in Cause No. J-4-SC-10-007975. Obtained in Travis County Justice of the Peace, Precinct 4 | 11 U.S.C. § 522(d)(5) | $976.00 | $976.00 |
| | | **$9,309.32** | **$175,734.32** |

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE: **Angelique Stephanie Naylor**

CASE NO **10-12009**

CHAPTER 7

*AMENDED 12/18/2013*
# SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)

## Exemption Totals by Category:
(Values and liens of surrendered property are NOT included in this section)

Scheme Selected: **Federal**

| No. | Category | Gross Property Value | Total Encumbrances | Total Equity | Total Amount Exempt | Total Amount Non-Exempt |
|---|---|---|---|---|---|---|
| N/A | Real Property. | $166,717.00 | $166,425.00 | $292.00 | $292.00 | $0.00 |
| 1. | Cash on hand. | $57.65 | $0.00 | $57.65 | $57.65 | $0.00 |
| 2. | Checking, savings or other financial accounts, CD's or shares in banks... | $963.67 | $0.00 | $963.67 | $963.67 | $0.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, others. | $150.00 | $0.00 | $150.00 | $150.00 | $0.00 |
| 4. | Household goods and furnishings, including audio, video... | $4,350.00 | $0.00 | $4,350.00 | $4,350.00 | $0.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, records.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6. | Wearing apparel. | $500.00 | $0.00 | $500.00 | $500.00 | $0.00 |
| 7. | Furs and jewelry. | $500.00 | $0.00 | $500.00 | $500.00 | $0.00 |
| 8. | Firearms and sports, photographic and other hobby equipment. | $250.00 | $0.00 | $250.00 | $250.00 | $0.00 |
| 9. | Interests in insurance policies. | $870.00 | $0.00 | $870.00 | $870.00 | $0.00 |
| 10. | Annuities. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11. | Education IRAs. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12. | Interests in IRA, ERISA, Keogh... | $400.00 | $0.00 | $400.00 | $400.00 | $0.00 |
| 13. | Stock and interests in incorporated... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 14. | Interests in partnerships.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 15. | Government and corporate bonds... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 16. | Accounts receivable. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 17. | Alimony, maintenance, support, and property settlement to which the..... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 18. | Other liquidated debts owed debtor... | $976.00 | $0.00 | $976.00 | $976.00 | $0.00 |
| 19. | Equitable or future interests, life estates, and rights or powers..... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 20. | Contingent and noncontingent interests in estate of decedent, death benefit.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 21. | Other contingent and unliquidated claims of every nature..... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Copyright 1996-2013, LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300 -- All rights reserved.

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE: Angelique Stephanie Naylor

CASE NO 10-12009

CHAPTER 7

*AMENDED 12/18/2013*
## SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)
*Continuation Sheet # 1*

### Exemption Totals by Category:
(Values and liens of surrendered property are NOT included in this section)

Scheme Selected: **Federal**

| No. | Category | Gross Property Value | Total Encumbrances | Total Equity | Total Amount Exempt | Total Amount Non-Exempt |
|-----|----------|---------------------|--------------------|--------------|--------------------|------------------------|
| 22. | Patents, copyrights, and other intellectual property. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 23. | Licenses, franchises, and other.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 24. | Customer Lists. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 25. | Automobiles, trucks, trailers, vehicles... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 26. | Boats, motors and accessories. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 27. | Aircraft and accessories. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 28. | Office equipment, furnishings... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 29. | Machinery, fixtures used in business. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 30. | Inventory. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 31. | Animals. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 32. | Crops - growing or harvested. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 33. | Farming equipment and implements. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 34. | Farm supplies, chemicals, and feed. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 35. | Other personal property of any kind. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | **TOTALS:** | **$175,734.32** | **$166,425.00** | **$9,309.32** | **$9,309.32** | **$0.00** |

### Surrendered Property:
The following property is to be surrendered by the debtor. Although this property is NOT exempt, it is NOT considered "non-exempt" for purposes of this analysis. The below listed items are to be returned to the lienholder.

| Property Description | Market Value | Lien | Equity |
|----------------------|--------------|------|--------|
| **Real Property** | | | |
| 6907 Lovely Lane, Austin, TX 78744 | $70,000.00 | $71,586.15 | $0.00 |
| **Personal Property** | | | |
| (None) | | | |
| **TOTALS:** | **$70,000.00** | **$71,586.15** | **$0.00** |

### Non-Exempt Property by Item:
The following property, or a portion thereof, is non-exempt.

| Property Description | Market Value | Lien | Equity | Non-Exempt Amount |
|----------------------|--------------|------|--------|-------------------|
| **Real Property** | | | | |
| (None) | | | | |

*Copyright 1996-2013, LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300 -- All rights reserved.*

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE:  **Angelique Stephanie Naylor**

CASE NO    **10-12009**

CHAPTER    7

*AMENDED 12/18/2013*
## SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)
*Continuation Sheet # 2*

**Personal Property**
(None)

| | | | | |
|---|---|---|---|---|
| **TOTALS:** | $0.00 | $0.00 | $0.00 | $0.00 |

| Summary | |
|---|---|
| A. Gross Property Value (not including surrendered property) | $175,734.32 |
| B. Gross Property Value of Surrendered Property | $70,000.00 |
| C. Total Gross Property Value (A+B) | $245,734.32 |
| D. Gross Amount of Encumbrances (not including surrendered property) | $166,425.00 |
| E. Gross Amount of Encumbrances on Surrendered Property | $71,586.15 |
| F. Total Gross Encumbrances (D+E) | $238,011.15 |
| G. Total Equity (not including surrendered property) / (A-D) | $9,309.32 |
| H. Total Equity in surrendered items  (B-E) | $0.00 |
| I.  Total Equity  (C-F) | $9,309.32 |
| J. Total Exemptions Claimed          (Wild Card Used: $4,697.32, Available: $7,277.68) | $9,309.32 |
| K. Total Non-Exempt Property Remaining  (G-J) | $0.00 |

*Copyright 1996-2013, LegalPRO Systems, Inc., San Antonio, Texas  (210) 561-5300 -- All rights reserved.*

B6F (Official Form 6F) (12/07)
In re   **Angelique Stephanie Naylor**

12/18/2013 06:07:34pm

Case No.   **10-12009**
                      (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  6283<br>ATT<br>P.O. Box 5001<br>Carol Stream, IL 60197-5001 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS: | | | | $57.04 |
| ACCT #:<br>Bank of America<br>P.O. Box 10219<br>Van Nuys, CA 91410-0219 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:  3719<br>Capital One Bank, N.A.<br>P.O. Box 60599<br>City of Industry, CA 91716-0599 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | $1,373.79 |
| ACCT #:  3360<br>Chase Credit Card<br>P.O. Box 94014<br>Palatine, IL 60094-4014 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS: | | | | $5,964.58 |
| ACCT #:  4921<br>Chase Credit Card<br>P.O. Box 94014<br>Palatine, IL 60094-4014 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | $416.69 |
| ACCT #:  4219<br>Clinical Pathology (Lab) Associates<br>P.O. Box 141669<br>Austin, TX 78714-1669 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Medical Services**<br>REMARKS: | | | | $310.75 |

Subtotal > $8,122.85

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

_____4_____continuation sheets attached

B6F (Official Form 6F) (12/07) - Cont.
In re   Angelique Stephanie Naylor                                           Case No.   10-12009
                                                                                      (if known)

12/18/2013 06:07:34pm

*AMENDED 12/18/2013*
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Representing: Clinical Pathology (Lab) Associates | | | American Medical Collection Agency P.O. box 1235 Elmsford, NY 10523-0935 | | | | Notice Only |
| ACCT #:  6624 Compass Bank/HSBC Mastercard P.O. Box 601012 City of Industry, CA 91716-0102 | | - | DATE INCURRED: CONSIDERATION: Credit Card REMARKS: | | | | $3,347.27 |
| ACCT #:  9235 Discover P.O. Box 6103 Carol Stream, IL 60197-6103 | | - | DATE INCURRED: CONSIDERATION: Credit Card REMARKS: | | | | $5,012.88 |
| ACCT #: Equity Trust Company Custodian FBO, Rebecca L. Clark, IRA 225 Burns Elyria, OH 44035 | | - | DATE INCURRED: CONSIDERATION: Personal Loan REMARKS: | | | | $20,000.00 |
| ACCT #:  9-178 Faith Chapel Funeral Home 100 Beverly Parkway Pensacola, FL 32505 | | - | DATE INCURRED: CONSIDERATION: Non-Purchase Money REMARKS: | | | | $206.84 |
| ACCT #: Gage Furniture 800 Walnut Street F4030-04C Des Moines, IA 50309 | | - | DATE INCURRED: CONSIDERATION: Purchase Money REMARKS: This amount has already been charged off by the creditor due to payment by debtor of one-half of the total amount due. | | | | $3,055.68 |

Sheet no. ____1____ of ____4____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   $31,622.67

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.
In re   **Angelique Stephanie Naylor**

Case No.   **10-12009**
(if known)

*AMENDED 12/18/2013*
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  3360<br>**GE Money Bank/Care Credit**<br>P.O. Box 960061<br>Orlando, FL 32896-0061 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | $5,964.58 |
| ACCT #:  0669<br>**Gold's Gym International**<br>125 E. John Carpenter Freeway<br>Suite 1300<br>Irving, TX 75062 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS: | | | | $162.33 |
| ACCT #:<br>**John Thomas Aiken**<br>1101 Durham Drive<br>Austin, TX  78753 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Contract/Lease**<br>REMARKS:<br>**Expired lease with an option to purchase the property he is presently occupying. Contract expired in April of 2009 but Debtor continue** | | | | $0.00 |
| | | | to occupy the house at this time. | | | | |
| **Representing:**<br>**John Thomas Aiken** | | | **Bill Gammon**<br>1201 Spyglass, Suite 100<br>Austin, TX 78746 | | | | Notice Only |
| ACCT #:  1282<br>**Midland Credit Management**<br>P.O. Box 60578<br>Los Angeles, CA 90060-0578 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Collecting for - MCM/HSBC Bank**<br>REMARKS: | | | | $3,598.82 |

Sheet no. ____2____ of ____4____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   $9,725.73

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.
In re   Angelique Stephanie Naylor

12/18/2013 06:07:34pm

Case No.   10-12009
(if known)

AMENDED 12/18/2013
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Representing: Midland Credit Management | | | MCM/HSBC Bank Dept. 12421 P.O. Box 603 Oaks, PA 19456 | | | | Notice Only |
| ACCT #: Northstar Location Services 4285 Genesee Street Cheektowaga, nY 14225-1943 | | - | DATE INCURRED: CONSIDERATION: Collection Service REMARKS: | | | | $6,350.40 |
| Representing: Northstar Location Services | | | Chase Credit Card P.O. Box 94014 Palatine, IL 60094-4014 | | | | Notice Only |
| ACCT #:  6907 Real Green Slopes HOA 9442 Capital of Texas Highway Commerce, GA 30529 | | - | DATE INCURRED: CONSIDERATION: HOA fees REMARKS: | | | | $484.22 |
| ACCT #:  769/4 Real Manage 2633 McKinney Ave #103-502 Dallas, TX 75204 | | - | DATE INCURRED: CONSIDERATION: HOA fees REMARKS: | | | | $146.00 |
| ACCT #:  2614 United Recovery System P.O. Box 722929 Houston, TX 77272 | | - | DATE INCURRED: CONSIDERATION: Collecting for - Chase Bank REMARKS: | | | | $1,588.60 |

Sheet no. ___3___ of ___4___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   $8,569.22

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.
In re   Angelique Stephanie Naylor                                       Case No.   10-12009
                                                                                     (if known)

                                                                 12/18/2013 06:07:34pm

AMENDED 12/18/2013
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Representing: United Recovery System | | | Chase Bank P.O. Box 94014 Palatine, IL 60094-4014 | | | | Notice Only |
| ACCT #: 1839 US Airways/Barclays Bank MC P.O. Box 13317 Philadelphia, PA 19101-3337 | | | DATE INCURRED: CONSIDERATION: Credit Card REMARKS: | | | | $891.85 |
| ACCT #: 7156 Wells Fargo Loan P.O. Box 660278 Dallas, TX 75266-0278 | | | DATE INCURRED: CONSIDERATION: Loan REMARKS: | | | | $800.00 |
| ACCT #: 1500 Wells Fargo Loan P.O. Box 660278 Dallas, TX 75266-0278 | | | DATE INCURRED: CONSIDERATION: Loan REMARKS: | | | | $800.00 |
| Representing: Wells Fargo Loan | | | Associated Credit Services 105B South Street P.O. Box 9100 Hopkinton, MA 01748 | | | | Notice Only |

Sheet no. ___4___ of ___4___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   $2,491.85

Total >   $60,532.32

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

IN RE:   Angelique Stephanie Naylor

CASE NO   **10-12009**

CHAPTER   **7**

*AMENDED 12/18/2013*
**VERIFICATION OF CREDITOR MATRIX**

The above named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date  12/18/2013

Signature  _/s/ Angelique Stephanie Naylor_
*Angelique Stephanie Naylor*

Date

Signature

Bill Gammon
1201 Spyglass, Suite 100
Austin, TX 78746


John Thomas Aiken
1101 Durham Drive
Austin, TX   78753


United States Department of Justice
United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216


United States Trustee
903 San Jacinto, Suite 230
Austin, TX 78701



**CLOSED**

# U.S. Bankruptcy Court
## Western District of Texas (Austin)
### Bankruptcy Petition #: 10-12009-tmd

*Assigned to:* Bankruptcy Judge Tony M. Davis
Chapter 7
Voluntary
Asset

*Date filed:* 07/22/2010
*Date reopened:* 12/11/2013
*Date terminated:* 01/23/2014
*Debtor discharged:* 12/17/2010
*341 meeting:* 10/15/2010
*Deadline for objecting to discharge:* 10/26/2010

*Debtor disposition:* Standard Discharge

**Debtor**
**Angelique Stephanie Naylor**
1101 Durham Drive
Austin, TX 78753
TRAVIS-TX
SSN / ITIN: xxx-xx-3528

represented by **Douglas J. Powell**
820 West 10th Street
Austin, TX 78701
(512) 476-2457
Fax : (512) 477-4503
Email: notices@swbell.net

**Brian Edward Walters**
Walters Dunn, PLLC
1101 Navasota
Suite 1
Austin, TX 78702
512-236-1114
Fax : 512-236-1292
Email: bwalters@waltersdunn.com

*Trustee*
**Randolph N Osherow**
342 W Woodlawn, Suite 100
San Antonio, TX 78212
(210) 738-3001
*TERMINATED: 12/11/2013*

| Filing Date | # | Docket Text |
|---|---|---|
| 07/22/2010 | <u>1</u><br>(11 pgs) | Voluntary Petition under Chapter 7 Without Schedules, Without Statements, (Filing Fee: $ 299) filed by Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 07/29/2010 (Walters, Brian) |

| 07/22/2010 | 2 (1 pg) | Certificate of Budget and Credit Counseling-First Debtor filed by Angelique Stephanie Naylor. (Walters, Brian) |
|---|---|---|
| 07/22/2010 | | ICC-Fee Terminated for Voluntary Petition Chapter 7 (csupld)(10-12009) [caseupld,vol7cu] ( 299.00), Amount $ 299.00, Receipt 9369352 (U.S. Treasury) |
| 07/22/2010 | 4 (2 pgs) | Meeting of Creditors & Notice of Appointment of Interim Trustee Randolph N Osherow added to the case. with 341(a) meeting to be held on 08/27/2010 at 01:00 PM at Austin Room 118. Objections for Discharge due by 10/26/2010. (Walters, Brian) |
| 07/26/2010 | 3 (5 pgs) | Notice of Appearance and Request for Service of Notice filed by Mary A. Daffin for Creditor BAC Home Loans Servicing, LP. (Daffin, Mary) |
| 07/26/2010 | | Declaration for Electronic Filing Received (Related Document(s): 1 Voluntary Petition under Chapter 7 Without Schedules, Without Statements, (Filing Fee: $ 299) filed by Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 07/29/2010 (Walters, Brian)) (Miiller, Sherri) |
| 07/28/2010 | 5 (25 pgs; 2 docs) | Motion for Relief from Stay (30 Day Waiver Language) *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Paul K. Kim for Creditor BAC Home Loans Servicing, LP (Attachments: 1 Exhibit Deed of Trust)(Kim, Paul) |
| 07/28/2010 | | ICC-Fee Terminated for Motion Relief from Stay(10-12009-cag) [motion,mrlfsty] ( 150.00), Amount $ 150.00, Receipt 9384763 (U.S. Treasury) |
| 07/28/2010 | 6 (4 pgs) | BNC Certificate of Mailing (Related Document(s): 4 Meeting of Creditors & Notice of Appointment of Interim Trustee Randolph N Osherow added to the case. with 341(a) meeting to be held on 08/27/2010 at 01:00 PM at Austin Room 118. Objections for Discharge due by 10/26/2010. (Walters, Brian)) Service Date 07/28/2010. (Admin.) (Entered: 07/29/2010) |
| 07/29/2010 | 7 (1 pg) | **Hearing to Consider and Act Upon the Following:** (Related Document(s): 5 Motion for Relief from Stay (30 Day Waiver Language) *(14 Day Objection Language)* (Filing Fee: $150.00) filed by Paul K. Kim for Creditor BAC Home Loans Servicing, LP (Attachments: #(1) Exhibit Deed of Trust)(Kim, Paul)) **Hearing Scheduled For** |

| | | |
|---|---|---|
| | | **8/23/2010 at 09:30 AM at Austin Courtroom 1** (Boyd, Laurie) |
| 07/31/2010 | <u>8</u><br>(2 pgs) | BNC Certificate of Mailing (Related Document(s): <u>7</u> **Hearing to Consider and Act Upon the Following:** (Related Document(s): <u>5</u> Motion for Relief from Stay (30 Day Waiver Language) *(14 Day Objection Language)* (Filing Fee: $150.00) filed by Paul K. Kim for Creditor BAC Home Loans Servicing, LP (Attachments: #(1) Exhibit Deed of Trust)(Kim, Paul)) **Hearing Scheduled For 8/23/2010 at 09:30 AM at Austin Courtroom 1** (Boyd, Laurie)) Service Date 07/31/2010. (Admin.) |
| 08/03/2010 | <u>9</u><br>(46 pgs) | Schedules, Statements, and Summary filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 08/10/2010 (Walters, Brian) |
| 08/04/2010 | | Declaration for Electronic Filing Received (Related Document(s): <u>9</u> Schedules, Statements, and Summary filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 08/10/2010 (Walters, Brian)) (Boyd, Laurie) (Entered: 08/06/2010) |
| 08/18/2010 | <u>10</u><br>(3 pgs) | Order Regarding (related document(s): <u>5</u> Motion for Relief from Stay (30 Day Waiver Language) *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Paul K. Kim for Creditor BAC Home Loans Servicing, LP (Attachments: # 1 Exhibit Deed of Trust)(Kim, Paul)) (Order entered on 8/18/2010) (Chapman, Anita) |
| 08/19/2010 | <u>11</u><br>(2 pgs) | Notice of Appearance and Request for Service of Notice filed by Hilary B. Bonial for Creditor Wells Fargo Bank, N.A.. (Bonial, Hilary) |
| 08/20/2010 | <u>12</u><br>(4 pgs) | BNC Certificate of Mailing (Related Document(s): <u>10</u> Order Regarding (related document(s): <u>5</u> Motion for Relief from Stay (30 Day Waiver Language) *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Paul K. Kim for Creditor BAC Home Loans Servicing, LP (Attachments: # 1 Exhibit Deed of Trust)(Kim, Paul)) (Order entered on 8/18/2010) (Chapman, Anita)) Service Date 08/20/2010. (Admin.) (Entered: 08/21/2010) |

| | | |
|---|---|---|
| 08/31/2010 | | Trustee 341 Meeting Continued: on 9/13/2010 at 01:00 PM at Austin Room 118 (Osherow, Randolph) |
| 09/09/2010 | 13 (5 pgs) | Notice of 341 Meeting Reset filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. (Walters, Brian) |
| 09/13/2010 | | Trustee 341 Meeting Continued: on 10/15/2010 at 10:00 AM at Austin Room 118 (Osherow, Randolph) |
| 10/07/2010 | 14 (2 pgs) | Trustee's Request For Notice of Assets - Proofs of Claim Due 1/7/2011 (Osherow, Randolph) |
| 10/10/2010 | 15 (6 pgs) | Order Setting Proof of Claims Bar Date and Certificate of Mailing Service Date 10/10/2010. (Admin.) |
| 10/11/2010 | 16 (10 pgs) | Amended Schedules and Summary: Amended Schedule(s): F, ( Filing Fee: $ 26.00 ) filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 10/18/2010 (Walters, Brian) |
| 10/11/2010 | | ICC-Fee Terminated for Amended Schedules (with D, E, F)(10-12009-cag) [misc,amdschsf] ( 26.00), Amount $ 26.00, Receipt 9595495 (U.S. Treasury) |
| 10/14/2010 | | Declaration for Electronic Filing Received (Related Document(s): 16 Amended Schedules and Summary: Amended Schedule(s): F, ( Filing Fee: $ 26.00 ) filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 10/18/2010 (Walters, Brian)) (Chapman, Anita) (Entered: 10/15/2010) |
| 10/18/2010 | | 341 Meeting of Creditors Held (Osherow, Randolph) |
| 10/20/2010 | 17 (7 pgs) | Application to Employ Realtor, Daniel Laird of Laird Realty, Inc. (21 Day Objection Language) filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph) |
| 10/20/2010 | 18 (5 pgs) | Trustee's Application to Pay Real Estate Broker's Commission on the Sale of Debtor's Real Property from Proceeds of the Sale (21 Day Objection Language) (Osherow, Randolph) |
| 10/29/2010 | 19 (33 pgs; 5 docs) | Motion for Relief from Stay (14 Day Objection Language) ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor |

| | | |
|---|---|---|
| | | Wells Fargo Bank, N.A. (Attachments: 1 Exhibit Paylog2 Exhibit "A"3 Exhibit "B"4 Affidavit)(Burns, Michael) |
| 10/31/2010 | | ICC-Fee Terminated for Motion Relief from Stay(10-12009-cag) [motion,mrlfsty] ( 150.00), Amount $ 150.00, Receipt 9654878 (U.S. Treasury) |
| 11/01/2010 | 20 (1 pg) | **Hearing to Consider and Act Upon the Following:** (Related Document(s): 19 Motion for Relief from Stay *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A. (Attachments: # 1 Exhibit Paylog# 2 Exhibit "A"# 3 Exhibit "B"# 4 Affidavit)(Burns, Michael)) Hearing Scheduled For 12/6/2010 at 09:30 AM at Austin Courtroom 1 (Chapman, Anita) |
| 11/03/2010 | 21 (2 pgs) | BNC Certificate of Mailing (Related Document(s): 20 **Hearing to Consider and Act Upon the Following:** (Related Document(s): 19 Motion for Relief from Stay *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A. (Attachments: # 1 Exhibit Paylog# 2 Exhibit "A"# 3 Exhibit "B"# 4 Affidavit)(Burns, Michael)) Hearing Scheduled For 12/6/2010 at 09:30 AM at Austin Courtroom 1 (Chapman, Anita)) Service Date 11/03/2010. (Admin.) (Entered: 11/04/2010) |
| 11/12/2010 | 22 (5 pgs) | Response Filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor (Walters, Brian) (related document(s): 19 Motion for Relief from Stay *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A. (Attachments: # 1 Exhibit Paylog# 2 Exhibit "A"# 3 Exhibit "B"# 4 Affidavit)(Burns, Michael)) |
| 11/16/2010 | 23 (1 pg) | Order Regarding (related document(s): 18 Trustee's Application to Pay Real Estate Broker's Commission on the Sale of Debtor's Real Property from Proceeds of the Sale *(21 Day Objection Language)* (Osherow, Randolph)) (Order entered on 11/16/2010) (Chapman, Anita) |
| 11/16/2010 | 24 (2 pgs) | Order Regarding (related document(s): 17 Application to Employ Realtor, Daniel Laird of Laird Realty, Inc. *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Party Daniel Laird has been added to the case.) (Order entered on |

| | | |
|---|---|---|
| | | 11/16/2010) (Chapman, Anita) |
| 11/18/2010 | 25 (2 pgs) | BNC Certificate of Mailing (Related Document(s): 23 Order Regarding (related document(s): 18 Trustee's Application to Pay Real Estate Broker's Commission on the Sale of Debtor's Real Property from Proceeds of the Sale *(21 Day Objection Language)* (Osherow, Randolph)) (Order entered on 11/16/2010) (Chapman, Anita)) Service Date 11/18/2010. (Admin.) (Entered: 11/19/2010) |
| 11/18/2010 | 26 (3 pgs) | BNC Certificate of Mailing (Related Document(s): 24 Order Regarding (related document(s): 17 Application to Employ Realtor, Daniel Laird of Laird Realty, Inc. *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Party Daniel Laird has been added to the case.) (Order entered on 11/16/2010) (Chapman, Anita)) Service Date 11/18/2010. (Admin.) (Entered: 11/19/2010) |
| 11/30/2010 | 27 (5 pgs) | Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph) |
| 12/06/2010 | | **Hearing RESET FROM 12/6/10 TO 12/20/10** (Related Document(s): 19 Motion for Relief from Stay *(14 Day Objection Language)* filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A.) **Hearing Scheduled For 12/20/2010 at 09:30 AM at Austin Courtroom 1...***RESET IN OPEN COURT; NO FURTHER NOTICE BY THE COURT...* (Lopez, Jennifer) (Entered: 12/07/2010) |
| 12/17/2010 | 28 (1 pg) | Financial Management Course Certificate - First Debtor Only filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. (Walters, Brian) |
| 12/17/2010 | 29 (2 pgs) | Order Discharging Debtor(s) (Admin.) |
| 12/19/2010 | 30 (4 pgs) | BNC Certificate of Mailing (Related Document(s): 29 Order Discharging Debtor(s) (Admin.)) Service Date 12/19/2010. (Admin.) |
| 12/20/2010 | | Hearing Held: MOOT - CASE DISCHARGED 12/17/2010. . . (Related Document(s): 19 Motion for Relief from Stay *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit Paylog# 2 Exhibit "A"# 3 Exhibit "B"# 4 Affidavit)(Burns, Michael)) (Chapman, Anita) (Entered: 01/06/2011) |
| 12/27/2010 | <u>31</u><br>(2 pgs) | Order Regarding (related document(s): <u>27</u> Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010) (Gil, Elizabeth) |
| 12/29/2010 | <u>32</u><br>(3 pgs) | BNC Certificate of Mailing (Related Document(s): <u>31</u> Order Regarding (related document(s): <u>27</u> Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010) (Gil, Elizabeth)) Service Date 12/29/2010. (Admin.) |
| 01/05/2011 | <u>33</u><br>(2 pgs) | Order Regarding (related document(s): <u>19</u> Motion for Relief from Stay *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A. (Attachments: # 1 Exhibit Paylog# 2 Exhibit "A"# 3 Exhibit "B"# 4 Affidavit)(Burns, Michael)) (Order entered on 1/5/2011) (Chapman, Anita) |
| 01/07/2011 | <u>34</u><br>(3 pgs) | BNC Certificate of Mailing (Related Document(s): <u>33</u> Order Regarding (related document(s): <u>19</u> Motion for Relief from Stay *(14 Day Objection Language)* ( Filing Fee: $ 150.00 ) filed by Michael J. Burns for Creditor Wells Fargo Bank, N.A. (Attachments: # 1 Exhibit Paylog# 2 Exhibit "A"# 3 Exhibit "B"# 4 Affidavit)(Burns, Michael)) (Order entered on 1/5/2011) (Chapman, Anita)) Service Date 01/07/2011. (Admin.) (Entered: 01/08/2011) |
| 01/28/2011 | <u>35</u><br>(6 pgs) | Trustee's Motion to Reclassify Claim No. 9 filed by Equity Trust Company and Allow as a General Unsecured Claim in the Amount of $55,000.00 *(21 Day Objection Language)* (Osherow, Randolph) |
| 02/23/2011 | <u>36</u><br>(1 pg) | Order Regarding (related document(s): <u>35</u> Trustee's Motion to Reclassify Claim No. 9 filed by Equity Trust Company and Allow as a General Unsecured Claim in the Amount of $55,000.00 *(21 Day Objection Language)* (Osherow, Randolph)) (Order entered on 2/23/2011) (Boyd, Laurie) |
| 02/25/2011 | <u>37</u><br>(2 pgs) | BNC Certificate of Mailing (Related Document(s): <u>36</u> Order Regarding (related document(s): <u>35</u> Trustee's Motion to |

| | | |
|---|---|---|
| | | Reclassify Claim No. 9 filed by Equity Trust Company and Allow as a General Unsecured Claim in the Amount of $55,000.00 *(21 Day Objection Language)* (Osherow, Randolph)) (Order entered on 2/23/2011) (Boyd, Laurie)) Service Date 02/25/2011. (Admin.) |
| 04/22/2011 | <u>38</u> (15 pgs) | Adversary case 11-01037. Complaint filed by Randolph N Osherow against Antex InvestmentGroup, Inc. (Filing Fee: $250.00) (Nature(s) of Suit:(91 (Declaratory judgment))). (Osherow, Randolph) |
| 05/17/2011 | <u>39</u> (7 pgs) | Application to Employ Accountant, Janet Rakowitz of WYSI WYG Consulting *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph) |
| 06/13/2011 | <u>40</u> (1 pg) | Order Regarding (related document(s): <u>39</u> Application to Employ Accountant, Janet Rakowitz of WYSI WYG Consulting *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Party Janet Rakowitz has been added to the case.) (Order entered on 6/13/2011) (Gil, Elizabeth) |
| 06/15/2011 | <u>41</u> (2 pgs) | BNC Certificate of Mailing (Related Document(s): <u>40</u> Order Regarding (related document(s): <u>39</u> Application to Employ Accountant, Janet Rakowitz of WYSI WYG Consulting *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Party Janet Rakowitz has been added to the case.) (Order entered on 6/13/2011) (Gil, Elizabeth)) Service Date 06/15/2011. (Admin.) |
| 07/07/2011 | <u>42</u> (17 pgs; 2 docs) | Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: <u>1</u> Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph) |
| 07/07/2011 | <u>43</u> (4 pgs) | Trustee's Notice of Final Report Before Distribution and Applications for Compensation (Osherow (TFR/TDR3), Randolph) (related document(s): <u>42</u> Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) |

| | | |
|---|---|---|
| 07/07/2011 | | The United States Trustee has reviewed the Chapter 7 Trustee's Final Report, Application for Compensation and Application(s) for Compensation of Professionals. (Hobbs, Henry) |
| 07/07/2011 | 44 (5 pgs) | Trustee's Certificate of Service (Osherow, Randolph) (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph), 43 Trustee's Notice of Final Report Before Distribution and Applications for Compensation (Osherow (TFR/TDR3), Randolph) (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph))) |
| 07/10/2011 | 45 (6 pgs) | BNC Certificate of Mailing (Related Document(s): 43 Trustee's Notice of Final Report Before Distribution and Applications for Compensation (Osherow (TFR/TDR3), Randolph) (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph))) Service Date 07/10/2011. (Admin.) |
| 07/28/2011 | 46 (2 pgs) | Objection *to Trustee's Proposed Distribution* Filed by Mark Curtis Taylor for Creditor Christine Rousseau (Taylor, Mark) (related document(s): 43 Trustee's Notice of Final Report Before Distribution and Applications for Compensation (Osherow (TFR/TDR3), Randolph) (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph))) |
| 08/01/2011 | 47 (1 pg) | Order of Distribution Approving Trustee's Application for Compensation Requested in Final Report Before Distribution - for Randolph N Osherow, Trustee Chapter 7, Fees awarded: $3750.08, Expenses awarded: $332.58; Awarded on 8/1/2011 (related document(s): 42 Chapter 7 |

| | | |
|---|---|---|
| | | Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Order entered on 8/1/2011) (Gil, Elizabeth) |
| 08/01/2011 | 48 (1 pg) | Order Vacating (related document(s): 47 Order of Distribution Approving Trustee's Application for Compensation Requested in Final Report Before Distribution - for Randolph N Osherow, Trustee Chapter 7, Fees awarded: $3750.08, Expenses awarded: $332.58; Awarded on 8/1/2011 (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Order entered on 8/1/2011) (Gil, Elizabeth)) (Order entered on 8/1/2011) (Gil, Elizabeth) |
| 08/01/2011 | 49 (1 pg) | **Hearing to Consider and Act Upon the Following:** (Related Document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) **Hearing Scheduled For 9/20/2011 at 09:00 AM at Austin Courtroom 1**.....*IF TIME ESTIMATE FOR BOTH SIDES EXCEEDS 30 MINUTES, PLEASE E-MAIL THE COURTROOM DEPUTY AT JENNIFER_LOPEZ@TXWB.USCOURTS.GOV FOR A SPECIAL SETTING.*(Lopez, Jennifer) |
| 08/03/2011 | 50 (2 pgs) | BNC Certificate of Mailing (Related Document(s): 49 **Hearing to Consider and Act Upon the Following:** (Related Document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) **Hearing Scheduled For 9/20/2011 at 09:00 AM at Austin Courtroom 1**.....*IF TIME ESTIMATE FOR BOTH SIDES EXCEEDS 30 MINUTES, PLEASE E-MAIL THE COURTROOM DEPUTY AT JENNIFER_LOPEZ@TXWB.USCOURTS.GOV FOR A SPECIAL SETTING.*(Lopez, Jennifer)) Service Date 08/03/2011. (Admin.) |

| 08/03/2011 | 51 (2 pgs) | BNC Certificate of Mailing (Related Document(s): 47 Order of Distribution Approving Trustee's Application for Compensation Requested in Final Report Before Distribution - for Randolph N Osherow, Trustee Chapter 7, Fees awarded: $3750.08, Expenses awarded: $332.58; Awarded on 8/1/2011 (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Order entered on 8/1/2011) (Gil, Elizabeth)) Service Date 08/03/2011. (Admin.) |
| --- | --- | --- |
| 08/03/2011 | 52 (2 pgs) | BNC Certificate of Mailing (Related Document(s): 48 Order Vacating (related document(s): 47 Order of Distribution Approving Trustee's Application for Compensation Requested in Final Report Before Distribution - for Randolph N Osherow, Trustee Chapter 7, Fees awarded: $3750.08, Expenses awarded: $332.58; Awarded on 8/1/2011 (related document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Order entered on 8/1/2011) (Gil, Elizabeth)) (Order entered on 8/1/2011) (Gil, Elizabeth)) Service Date 08/03/2011. (Admin.) |
| 08/03/2011 | 53 (2 pgs) | Certificate of Mailing (Related Document(s): 49 **Hearing to Consider and Act Upon the Following:...IF TIME ESTIMATE FOR BOTH SIDES EXCEEDS 30 MINUTES,** PLEASE E-MAIL THE COURTROOM DEPUTY AT JENNIFER_LOPEZ@TXWB.USCOURTS.GOV FOR A SPECIAL SETTING.(Lopez, Jennifer)) (Dozauer, Maria) (Entered: 08/12/2011) |
| 09/20/2011 | | Hearing Held: AGREED ORDER UPLOADED. . . (Related Document(s): 42 Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Chapman, Anita) (Entered: 09/21/2011) |
| 09/21/2011 | 54 (2 pgs) | Order of Distribution Approving Trustee's Application for Compensation Requested in Final Report Before |

| | | | |
|---|---|---|---|
| | | | Distribution - for Randolph N Osherow, Trustee, Fees awarded: $3750.08, Expenses awarded: $332.58; Awarded on 9/21/2011 (related document(s): <u>42</u> Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Order entered on 9/21/2011) (Miiller, Sherri) |
| 09/23/2011 | <u>55</u> (3 pgs) | | BNC Certificate of Mailing (Related Document(s): <u>54</u> Order of Distribution Approving Trustee's Application for Compensation Requested in Final Report Before Distribution - for Randolph N Osherow, Trustee, Fees awarded: $3750.08, Expenses awarded: $332.58; Awarded on 9/21/2011 (related document(s): <u>42</u> Chapter 7 Trustee's Final Report Before Distribution, Application for Compensation and Application(s) for Compensation of Professionals (Attachments: # 1 Trustee's Application for Compensation and Expenses)(Osherow (TFR/TDR3), Randolph)) (Order entered on 9/21/2011) (Miiller, Sherri)) Service Date 09/23/2011. (Admin.) |
| 12/15/2011 | <u>56</u> (5 pgs) | | Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): <u>31</u> Order Regarding (related document(s): <u>27</u> Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010)) |
| 01/05/2012 | <u>57</u> (2 pgs) | | Objection Filed by Mark Curtis Taylor for Creditor Christine Rousseau (Taylor, Mark) (related document(s): <u>56</u> Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): <u>31</u> Order Regarding (related document(s): <u>27</u> Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010))) |
| 01/06/2012 | <u>58</u> (1 pg) | | **Hearing to Consider and Act Upon the Following:** (Related Document(s): <u>56</u> Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): <u>31</u> Order Regarding (related document(s): <u>27</u> Motion to Sell Property Free and Clear of Liens *(21 Day* |

| | | | |
|---|---|---|---|
| | | | *Objection Language*) filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010))) **Hearing Scheduled For 2/7/2012 at 09:00 AM at Austin Courtroom 1** .....*IF TIME ESTIMATE FOR BOTH SIDES EXCEEDS 30 MINUTES, PLEASE E-MAIL THE COURTROOM DEPUTY AT JENNIFER_LOPEZ@TXWB.USCOURTS.GOV FOR A SPECIAL SETTING.* (Lopez, Jennifer) |
| 01/08/2012 | | 59<br>(4 pgs) | BNC Certificate of Mailing (Related Document(s): 58 **Hearing to Consider and Act Upon the Following:** (Related Document(s): 56 Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): 31 Order Regarding (related document(s): 27 Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010))) **Hearing Scheduled For 2/7/2012 at 09:00 AM at Austin Courtroom 1** .....*IF TIME ESTIMATE FOR BOTH SIDES EXCEEDS 30 MINUTES, PLEASE E-MAIL THE COURTROOM DEPUTY AT JENNIFER_LOPEZ@TXWB.USCOURTS.GOV FOR A SPECIAL SETTING.*) Notice Date 01/08/2012. (Admin.) |
| 02/07/2012 | | | Hearing Held: AGREED ORDER TO COME BY MR. OSHEROW. . . (Related Document(s): 56 Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): 31 Order Regarding (related document(s): 27 Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010))) Order due by 2/21/2012 (Gil, Elizabeth) (Entered: 02/09/2012) |
| 02/27/2012 | | 60<br>(2 pgs) | Order Regarding (related document(s): 56 Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): 31 Order Regarding (related document(s): 27 Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010))) (Order entered on 2/27/2012) (Boyd, Laurie) |

| | | |
|---|---|---|
| 02/29/2012 | 61<br>(4 pgs) | BNC Certificate of Mailing (Related Document(s): 60 Order Regarding (related document(s): 56 Trustee's Motion to Approve Compromise Pursuant to Bankruptcy Rule 9019 *(21 Day Objection Language)* (Osherow, Randolph) (related document(s): 31 Order Regarding (related document(s): 27 Motion to Sell Property Free and Clear of Liens *(21 Day Objection Language)* filed by Randolph N Osherow for Trustee Randolph N Osherow (Osherow, Randolph)) (Order entered on 12/27/2010))) (Order entered on 2/27/2012)) Notice Date 02/29/2012. (Admin.) (Entered: 03/01/2012) |
| 03/06/2012 | 62<br>(1 pg) | Notice of Change of Debtor Address filed by Brian Edward Walters for Debtor Angelique Stephanie Naylor. (Walters, Brian) |
| 07/30/2012 | 63<br>(16 pgs) | Chapter 7 Trustee's Final Account of Distribution, Certification the Estate has been Fully Administered and Application of Trustee to be Discharged. (Osherow (TFR/TDR4), Randolph) |
| 07/30/2012 | | The United States Trustee has reviewed the Chapter 7 Trustee's Final Account of Distribution, Certification the Estate has been Fully Administered and application of Trustee to be Discharge. The United States Trustee does not object to the relief requested. (Hobbs, Henry) |
| 08/14/2012 | | Bankruptcy Case Closed (Chapman, Anita) |
| 11/14/2013 | 64<br>(5 pgs; 2 docs) | Motion to Reopen Chapter 7 Case *(21 Day Objection Language)* ( Filing Fee: $ 260.00 ) filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor (Attachments: # 1 Proposed Order Proposed Order)(Powell, Douglas) |
| 11/14/2013 | | ICC-Fee Terminated for Motion to Reopen Chapter 7 Case(10-12009-cag) [motion,mreop7] ( 260.00), Amount $ 260.00, Receipt 13929462 (re:Doc# 64) (U.S. Treasury) |
| 12/11/2013 | 65<br>(2 pgs) | Order Granting (related document(s): 64 Motion to Reopen Chapter 7 Case *(21 Day Objection Language)* ( Filing Fee: $ 260.00 ) filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor (Attachments: # 1 Proposed Order Proposed Order)) ( Trustee Randolph N Osherow has been terminated from the case.) (Order entered on 12/11/2013) (Benitez, Estella) |

| | | |
|---|---|---|
| 12/13/2013 | 66<br>(3 pgs) | BNC Certificate of Mailing (Related Document(s): 65 Order Granting (related document(s): 64 Motion to Reopen Chapter 7 Case *(21 Day Objection Language)* ( Filing Fee: $ 260.00 ) filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor (Attachments: # 1 Proposed Order Proposed Order)) ( Trustee Randolph N Osherow has been terminated from the case.) (Order entered on 12/11/2013)) Notice Date 12/13/2013. (Admin.) (Entered: 12/14/2013) |
| 12/18/2013 | 67<br>(18 pgs) | Amended List of Creditors (adding or deleting creditor(s)), Adding *2 creditors*, and Amended Schedules and Summary with D, E, or F: ( Amended Schedule(s): B, C, C-1 and F), ( Filing Fee: $ 30.00 ) filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 12/26/2013 (Powell, Douglas) |
| 12/18/2013 | 68<br>(1 pg) | Certificate of Service filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor. (Powell, Douglas) (Related Document(s): 67 Amended List of Creditors (adding or deleting creditor(s)), Adding *2 creditors*, and Amended Schedules and Summary with D, E, or F: ( Amended Schedule(s): B, C, C-1 and F), ( Filing Fee: $ 30.00 ) filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 12/26/2013) |
| 12/23/2013 | | ICC-Fee Terminated for Amended List of Creditors (adding or deleting creditor(s)) and Amended Schedules with D, E, or F(10-12009-tmd) [misc,amdDEFm] ( 30.00), Amount $ 30.00, Receipt 14073892 (re:Doc# 67) (U.S. Treasury) |
| 01/02/2014 | | Declaration for Electronic Filing Received (Related Document(s): 67 Amended List of Creditors (adding or deleting creditor(s)), Adding *2 creditors*, and Amended Schedules and Summary with D, E, or F: ( Amended Schedule(s): B, C, C-1 and F), ( Filing Fee: $ 30.00 ) filed by Douglas J. Powell for Debtor Angelique Stephanie Naylor. -Declaration for Electronic Filing due by 12/26/2013) (Benitez, Estella) (Entered: 01/03/2014) |
| 01/23/2014 | | Bankruptcy Case Closed (Benitez, Estella) |

## PACER Service Center

### Transaction Receipt

| 01/29/2015 10:17:35 | | | |
|---|---|---|---|
| **PACER Login:** | rf3457:4027389:0 | **Client Code:** | naylor |
| **Description:** | Docket Report | **Search Criteria:** | 10-12009-tmd Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |



EXHIBIT

C

SECTION 2.  Section 311.016(b), Tax Code, is amended to read as follows:

(b) The municipality shall send a copy of a report made under this section to[:

[(1) the attorney general; and

[(2)] the comptroller.

SECTION 3.  Section 4.08(c), Chapter 427, Acts of the 44th Legislature, 1st Called Session, 1935, as amended (Article 8280-115, Vernon's Texas Civil Statutes), is amended to read as follows:

(c) A copy of the audit report shall be filed with the authority, the governor, the lieutenant governor, the speaker of the house of representatives, [the attorney general,] the commission, and the comptroller of public accounts.

SECTION 4.  A state agency is not required to report a technological innovation to the lieutenant governor and the speaker of the house of representatives under Section 2111.002(2)(B), Government Code, as amended by this Act, if the technological innovation was previously reported to the attorney general under Section 2111.002.

SECTION 5.  This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.  If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2005.

Passed by the House on April 22, 2005: Yeas 137, Nays 0, 1 present, not voting;  the House refused to concur in Senate amendments to H.B. No. 1820 on May 16, 2005, and requested the appointment of a conference committee to consider the differences between the two houses;  the House adopted the conference committee report on H.B. No. 1820 on May 27, 2005: Yeas 142, Nays 0, 2 present, not voting; passed by the Senate, with amendments, on May 12, 2005: Yeas 31, Nays 0;  at the request of the House, the Senate appointed a conference committee to consider the differences between the two houses;  the Senate adopted the conference committee report on H.B. No. 1820 on May 29, 2005: Yeas 31, Nays 0.

Approved June 18, 2005.

Effective June 18, 2005.

---

# CHAPTER 978

## H.B. No. 1823

### AN ACT

relating to the rights of a purchaser under an executory contract for conveyance of real property.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1.  Section 212.0115(c), Local Government Code, is amended to read as follows:

(c) On the written request of an owner of land, *a purchaser of real property under a contract for deed, executory contract, or other executory conveyance,* an entity that provides utility service, or the governing body of the municipality, the municipal authority responsible for approving plats shall make the following determinations regarding the owner's land or the land in which the entity or governing body is interested that is located within the jurisdiction of the municipality:

(1) whether a plat is required under this subchapter for the land; and

(2) if a plat is required, whether it has been prepared and whether it has been reviewed and approved by the authority.

SECTION 2.  Section 5.062, Property Code, is amended by amending Subsections (a) and (b) and adding Subsections (e), (f), and (g) to read as follows:

(a) This subchapter applies only to a transaction involving an executory contract for conveyance of real property used or to be used as the purchaser's residence or as the residence of a person related to the purchaser within the second degree by consanguinity or

affinity, as determined under Chapter 573, Government Code. For purposes of this subchapter, *and only for the purposes of this subchapter:*

    *(1)*[,] a lot measuring one acre or less is presumed to be residential property; *and*

    *(2) an option to purchase real property that includes or is combined or executed concurrently with a residential lease agreement, together with the lease, is considered an executory contract for conveyance of real property.*

    (b) This subchapter does not apply to *the following transactions under an executory contract:*

    *(1)* [a transaction involving] the sale of state land; or

    *(2)* a sale of land by:

      *(A)* the Veterans' Land Board;

      *(B) this state or a political subdivision of this state; or*

      *(C) an instrumentality, public corporation, or other entity created to act on behalf of this state or a political subdivision of this state, including an entity created under Chapter 303, 392, or 394, Local Government Code* [under an executory contract].

    *(e) Sections 5.066, 5.067, 5.071, 5.075, 5.081, and 5.082 do not apply to an executory contract described by Subsection (a)(2).*

    *(f) Notwithstanding any other provision of this subchapter, only the following sections apply to an executory contract described by Subsection (a)(2) if the term of the contract is three years or less and the purchaser and seller, or the purchaser's or seller's assignee, agent, or affiliate, have not been parties to an executory contract to purchase the property covered by the executory contract for longer than three years:*

    *(1) Sections 5.063–5.065;*

    *(2) Section 5.073, except for Section 5.073(a)(2); and*

    *(3) Sections 5.083 and 5.085.*

    *(g) Except as provided by Subsection (b), if Subsection (f) conflicts with another provision of this subchapter, Subsection (f) prevails.*

    SECTION 3. Subchapter D, Chapter 5, Property Code, is amended by adding Section 5.0621 to read as follows:

    *Sec. 5.0621. CONSTRUCTION WITH OTHER LAW. (a) Except as provided by Subsection (b), the provisions of this subchapter and Chapter 92 apply to the portion of an executory contract described by Section 5.062(a)(2) that is a residential lease agreement.*

    *(b) After a tenant exercises an option to purchase leased property under a residential lease described by Subsection (a), Chapter 92 no longer applies to the lease.*

    SECTION 4. Section 5.073, Property Code, is amended to read as follows:

    Sec. 5.073. CONTRACT TERMS, *CERTAIN WAIVERS* PROHIBITED. *(a)* A seller may not include as a term of the executory contract a provision that:

    (1) imposes an additional late-payment fee that exceeds the lesser of:

      (A) eight percent of the monthly payment under the contract; or

      (B) the actual administrative cost of processing the late payment;

    (2) prohibits the purchaser from pledging the purchaser's interest in the property as security to obtain a loan to place improvements, including utility improvements or fire protection improvements, on the property; [or]

    (3) imposes a prepayment penalty or any similar fee if the purchaser elects to pay the entire amount due under the contract before the scheduled payment date under the contract;

    *(4) forfeits an option fee or other option payment paid under the contract for a late payment; or*

    *(5) increases the purchase price, imposes a fee or charge of any type, or otherwise penalizes a purchaser leasing property with an option to buy the property for requesting repairs or exercising any other right under Chapter 92.*

*(b) A provision of the executory contract that purports to waive a right or exempt a party from a liability or duty under this subchapter is void.*

SECTION 5.  Section 5.077, Property Code, is amended by amending Subsection (c) and adding Subsection (d) to read as follows:

*(c) A seller who conducts less than two transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for:*

*(1) liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required by Subsection (a); and*

*(2) reasonable attorney's fees.*

*(d) A seller who conducts two or more transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for:*

*(1) liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and*

*(2) reasonable attorney's fees.*

SECTION 6.  Subchapter D, Chapter 5, Property Code, is amended by adding Sections 5.081 through 5.085 to read as follows:

*Sec. 5.081.  RIGHT TO CONVERT CONTRACT.  (a) A purchaser, at any time and without paying penalties or charges of any kind, is entitled to convert the purchaser's interest in property under an executory contract into recorded, legal title in accordance with this section.*

*(b) If the purchaser tenders to the seller an amount of money equal to the balance of the total amount owed by the purchaser to the seller under the executory contract, the seller shall transfer to the purchaser recorded, legal title of the property covered by the contract.*

*(c) Subject to Subsection (d), if the purchaser delivers to the seller of property covered by an executory contract a promissory note that is equal in amount to the balance of the total amount owed by the purchaser to the seller under the contract and that contains the same interest rate, due dates, and late fees as the contract:*

*(1) the seller shall execute a deed containing any warranties required by the contract and conveying to the purchaser recorded, legal title of the property; and*

*(2) the purchaser shall simultaneously execute a deed of trust that:*

*(A) contains the same terms as the contract regarding the purchaser's and seller's duties concerning the property;*

*(B) secures the purchaser's payment and performance under the promissory note and deed of trust; and*

*(C) conveys the property to the trustee, in trust, and confers on the trustee the power to sell the property if the purchaser defaults on the promissory note or the terms of the deed of trust.*

*(d) On or before the 10th day after the date the seller receives a promissory note under Subsection (c) that substantially complies with that subsection, the seller shall:*

*(1) deliver to the purchaser a written explanation that legally justifies why the seller refuses to convert the purchaser's interest into recorded, legal title under Subsection (c); or*

*(2) communicate with the purchaser to schedule a mutually agreeable day and time to execute the deed and deed of trust under Subsection (c).*

*(e) A seller who violates this section is liable to the purchaser in the same manner and amount as a seller who violates Section 5.079 is liable to a purchaser.  This subsection does not limit or affect any other rights or remedies a purchaser has under other law.*

*(f) On the last date that all of the conveyances described by Subsections (b) and (c) are executed, the executory contract:*

*(1) is considered completed; and*

*(2) has no further effect.*

*(g) The appropriate use of forms published by the Texas Real Estate Commission for transactions described by this section constitutes compliance with this section.*

*Sec. 5.082. REQUEST FOR BALANCE AND TRUSTEE. (a) A purchaser under an executory contract, on written request, is entitled to receive the following information from the seller:*

*(1) as of the date of the request or another date specified by the purchaser, the amount owed by the purchaser under the contract; and*

*(2) if applicable, the name and address of the seller's desired trustee for a deed of trust to be executed under Section 5.081.*

*(b) On or before the 10th day after the date the seller receives from the purchaser a written request for information described by Subsection (a), the seller shall provide to the purchaser a written statement of the requested information.*

*(c) If the seller does not timely respond to a request made under this section, the purchaser may:*

*(1) determine or pay the amount owed under the contract, including determining the amount necessary for a promissory note under Section 5.081; and*

*(2) if applicable, select a trustee for a deed of trust under Section 5.081.*

*(d) For purposes of Subsection (c)(2), a purchaser must select a trustee that lives or has a place of business in the same county where the property covered by the executory contract is located.*

*(e) Not later than the 20th day after the date a seller receives notice of an amount determined by a purchaser under Subsection (c)(1), the seller may contest that amount by sending a written objection to the purchaser. An objection under this subsection must:*

*(1) be sent to the purchaser by regular and certified mail;*

*(2) include the amount the seller claims is the amount owed under the contract; and*

*(3) be based on written records kept by the seller or the seller's agent that were maintained and regularly updated for the entire term of the executory contract.*

*Sec. 5.083. RIGHT TO CANCEL CONTRACT FOR IMPROPER PLATTING. (a) Except as provided by Subsection (c), in addition to other rights or remedies provided by law, the purchaser may cancel and rescind an executory contract at any time if the purchaser learns that the seller has not properly subdivided or platted the property that is covered by the contract in accordance with state and local law. A purchaser canceling and rescinding a contract under this subsection must:*

*(1) deliver a signed, written notice of the cancellation and rescission to the seller in person; or*

*(2) send a signed, written notice of the cancellation and rescission to the seller by telegram or certified or registered mail, return receipt requested.*

*(b) If the purchaser cancels the contract as provided under Subsection (a), the seller, not later than the 10th day after the date the seller receives the notice of cancellation and rescission, shall:*

*(1) deliver in person or send by telegram or certified or registered mail, return receipt requested, to the purchaser a signed, written notice that the seller intends to subdivide or plat the property properly; or*

*(2) return to the purchaser all payments of any kind made to the seller under the contract and reimburse the purchaser for:*

*(A) any payments the purchaser made to a taxing authority for the property; and*

*(B) the value of any improvements made to the property by the purchaser.*

*(c) A purchaser may not exercise the purchaser's right to cancel and rescind an executory contract under this section if, on or before the 90th day after the date the purchaser receives the seller's notice under Subsection (b)(1), the seller:*

*(1) properly subdivides or plats the property; and*

(2) *delivers in person or sends by telegram or certified or registered mail, return receipt requested, to the purchaser a signed, written notice evidencing that the property has been subdivided or platted in accordance with state and local law.*

(d) *The seller may not terminate the purchaser's possession of the property covered by the contract being canceled and rescinded before the seller pays the purchaser any money to which the purchaser is entitled under Subsection (b).*

*Sec. 5.084. RIGHT TO DEDUCT. If a seller is liable to a purchaser under this subchapter, the purchaser, without taking judicial action, may deduct the amount owed to the purchaser by the seller from any amounts owed to the seller by the purchaser under the terms of an executory contract.*

*Sec. 5.085. FEE SIMPLE TITLE REQUIRED; MAINTENANCE OF FEE SIMPLE TITLE. (a) A potential seller may not execute an executory contract with a potential purchaser if the seller does not own the property in fee simple free from any liens or other encumbrances.*

(b) *Except as provided by this subsection, a seller, or the seller's heirs or assigns, must maintain fee simple title free from any liens or other encumbrances to property covered by an executory contract for the entire duration of the contract. This subsection does not apply to a lien or encumbrance placed on the property that is:*

(1) *placed on the property because of the conduct of the purchaser;*

(2) *agreed to by the purchaser as a condition of a loan obtained to place improvements on the property, including utility or fire protection improvements; or*

(3) *placed on the property by the seller prior to the execution of the contract in exchange for a loan used only to purchase the property if:*

(A) *the seller, not later than the third day before the date the contract is executed, notifies the purchaser in a separate written disclosure:*

(i) *of the name, address, and phone number of the lienholder or, if applicable, servicer of the loan;*

(ii) *of the loan number and outstanding balance of the loan;*

(iii) *of the monthly payments due on the loan and the due date of those payments; and*

(iv) *in 14–point type that, if the seller fails to make timely payments to the lienholder, the lienholder may attempt to collect the debt by foreclosing on the lien and selling the property at a foreclosure sale;*

(B) *the lien:*

(i) *is attached only to the property sold to the purchaser under the contract; and*

(ii) *secures indebtedness that, at no time, is or will be greater in amount than the amount of the total outstanding balance owed by the purchaser under the executory contract;*

(C) *the lienholder:*

(i) *does not prohibit the property from being encumbered by an executory contract; and*

(ii) *consents to verify the status of the loan on request of the purchaser and to accept payments directly from the purchaser if the seller defaults on the loan; and*

(D) *the following covenants are placed in the executory contract:*

(i) *a covenant that obligates the seller to make timely payments on the loan and to give monthly statements to the purchaser reflecting the amount paid to the lienholder, the date the lienholder receives the payment, and the information described by Paragraph (A);*

(ii) *a covenant that obligates the seller, not later than the third day the seller receives or has actual knowledge of a document or an event described by this subparagraph, to notify the purchaser in writing in 14–point type that the seller has been sent a notice of default, notice of acceleration, or notice of foreclosure or has been*

sued in connection with a lien on the property and to attach a copy of all related documents received to the written notice; and

(iii) a covenant that warrants that if the seller does not make timely payments on the loan or any other indebtedness secured by the property, the purchaser may, without notice, cure any deficiency with a lienholder directly and deduct from the total outstanding balance owed by the purchaser under the executory contract, without the necessity of judicial action, 150 percent of any amount paid to the lienholder.

(c) A violation of this section:

(1) is a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code, and is actionable in a public or private suit brought under Subchapter E, Chapter 17, Business & Commerce Code; and

(2) in addition to other rights or remedies provided by law, entitles the purchaser to cancel and rescind the executory contract and receive from the seller:

(A) the return of all payments of any kind made to the seller under the contract; and

(B) reimbursement for:

(i) any payments the purchaser made to a taxing authority for the property; and

(ii) the value of any improvements made to the property by the purchaser.

(d) A seller is not liable under this section if:

(1) a lien is placed on the property by a person other than the seller; and

(2) not later than the 30th day after the date the seller receives notice of the lien, the seller takes all steps necessary to remove the lien and has the lien removed from the property.

SECTION 7. (a) Section 5.062, Property Code, as amended by this Act, and Section 5.0621, Property Code, as added by this Act, apply to an executory contract for conveyance entered into on or after January 1, 2006.

(b) Section 5.073, Property Code, as amended by this Act, applies only to an executory contract for conveyance that was entered into on or after the effective date of this Act. An executory contract that was entered into before the effective date of this Act is governed by the law in effect immediately before the effective date of this Act, and the former law is continued in effect for that purpose.

(c) Sections 5.081 and 5.082, Property Code, as added by this Act, apply to a conversion of title initiated or a request for information made on or after the effective date of this Act, regardless of the date on which the purchaser and seller entered into the executory contract that is the subject of the conversion or request.

(d) Section 5.083, Property Code, as added by this Act, applies only to a seller's failure or refusal to subdivide or plat real property on or after the effective date of this Act, regardless of the date on which the purchaser and seller entered into the executory contract covering the property that is improperly subdivided or platted.

(e) Section 5.084, Property Code, as added by this Act, applies to the computation of any amount owed to the seller by the purchaser under the terms of an executory contract on or after the effective date of this Act, regardless of the date on which the purchaser and seller entered into the executory contract.

(f) Section 5.085, Property Code, as added by this Act, applies only to an executory contract for conveyance that is entered into on or after the effective date of this Act. An executory contract for conveyance that is entered into before the effective date of this Act is covered by the law in effect at the time the contract was entered into, and that law is continued in effect for that purpose.

SECTION 8.  This Act takes effect September 1, 2005.

Passed by the House on May 12, 2005, by a non-record vote; the House concurred in Senate amendments to H.B. No. 1823 on May 26, 2005, by a non-record vote; passed by the Senate, with amendments, on May 24, 2005: Yeas 30, Nays 1.

Approved June 18, 2005.

Effective September 1, 2005.



court at law before the effective date of this Act. The appointment or election of a special judge of a county court at law before the effective date of this Act is governed by the law in effect on the date of the appointment or election, and the former law is continued in effect for that purpose.

SECTION 8. Except as provided by Section 1 of this Act, this Act takes effect September 1, 2001.

Passed the Senate on March 1, 2001: Yeas 30, Nays 0, one present, not voting; passed the House on May 23, 2001, by a non-record vote.

Approved June 13, 2001.

Effective September 1, 2001 except as provided in § 1.

---

## CHAPTER 693

S.B. No. 198

AN ACT

relating to executory contracts for the conveyance of real property.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Subchapters D and E, Chapter 5, Property Code, are amended to consolidate the subchapters by amending and redesignating Section 5.065 as Section 5.061, amending and redesignating Section 5.091 as Section 5.062, amending and redesignating Section 5.062 as Section 5.063, amending and redesignating Section 5.061 as Section 5.064, amending and redesignating Section 5.063 as Section 5.065, amending and redesignating Section 5.101 as Section 5.066, redesignating Section 5.064 as Section 5.067, amending and redesignating Section 5.093 as Section 5.068, amending and redesignating Section 5.094 as Section 5.069, adding Section 5.070, amending and redesignating Section 5.095 as Section 5.071, adding Section 5.072, amending and redesignating Section 5.096 as Section 5.073, redesignating Section 5.097 as Section 5.074, amending and redesignating Section 5.098 as Section 5.075, amending and redesignating Section 5.099 as Section 5.076, amending and redesignating Section 5.100 as Section 5.077, adding Section 5.078, amending and redesignating Section 5.102 as Section 5.079, and redesignating Section 5.103 as Section 5.080 to read as follows:

Sec. *5.061* [5.065]. *DEFINITION* [DEFAULT]. In this subchapter, "default" means the failure to:

(1) make a timely payment; or

(2) comply with a term of an executory contract.

Sec. *5.062* [5.091]. APPLICABILITY. (a) [This subchapter applies only to an executory contract that covers real property located in a county that, as determined by the Texas Department of Housing and Community Affairs:

[(1) has a per capita income that averaged 25 percent below the state average for the most recent three consecutive years for which statistics are available and an unemployment rate that averaged 25 percent above the state average for the most recent three consecutive years for which statistics are available; and

[(2) is within 200 miles of an international border.

[(b)] This subchapter applies only to a transaction involving an executory contract for conveyance of real property used or to be used as the purchaser's residence *or as the residence of a person related to the purchaser within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code.* For purposes of this subchapter, a lot measuring one acre or less is presumed to be residential property.

*(b)* [*(e)*] This subchapter does not apply to a transaction involving *the sale of state land or* a sale of land by the Veterans' Land Board under an executory contract.

*(c)* [*(d)*] This subchapter does not apply to an executory contract that provides for the delivery of a deed from the seller to the purchaser within 180 days of the date of the final execution of the executory contract.

*(d) Section 5.066 and Sections 5.068-5.080 do not apply to a transaction involving an executory contract for conveyance if the purchaser of the property:*

*(1) is related to the seller of the property within the second degree by consanguinity or affinity, as determined under Chapter 573, Government Code; and*

*(2) has waived the applicability of those sections in a written agreement.*

Sec. *5.063* [5.062]. NOTICE. (a) Notice under Section *5.064* [5.061 of this code] must be in writing *and*[. If the notice is mailed, it] must be *delivered* by registered or certified mail, *return receipt requested.* The notice must be conspicuous and printed in 14-point boldface type or 14-point uppercase typewritten letters, and must include on a separate page the statement:

NOTICE .                 .                   .

YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT TO BUY YOUR PROPERTY. UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE BY (date) THE SELLER HAS THE RIGHT TO TAKE POSSESSION OF YOUR PROPERTY.

(b) The notice must also:

(1) identify and explain the remedy the seller intends to enforce;

(2) if the purchaser has failed to make a timely payment, specify:

(A) the delinquent amount, itemized into principal and interest;

(B) any additional charges claimed, such as late charges or attorney's fees; and

(C) the period to which the delinquency and additional charges relate; and

(3) if the purchaser has failed to comply with a term of the contract, identify the term violated and the action required to cure the violation.

(c) Notice by mail is given when it is mailed to the purchaser's residence or place of business. [Notice by other writing is given when it is delivered to the purchaser at the purchaser's residence or place of business.] The affidavit of a person knowledgeable of the facts to the effect that notice was given is prima facie evidence of notice in an action involving a subsequent bona fide purchaser for value if the purchaser is not in possession of the real property and if the stated time to avoid the forfeiture has expired. A bona fide subsequent purchaser for value who relies upon the affidavit under this subsection shall take title free and clear of the contract.

Sec. *5.064* [5.061]. *SELLER'S REMEDIES ON DEFAULT* [AVOIDANCE OF FORFEITURE AND ACCELERATION OR OF RESCISSION]. A seller may enforce the remedy of rescission or of forfeiture and acceleration against a purchaser in default under an executory contract for conveyance of real property [used or to be used as the purchaser's residence] only if:

*(1) the seller notifies the purchaser of:*

*(A)* [(1)] the seller's intent to enforce a remedy under this section; and

*(B)* [(2)] the *purchaser's right to cure the default within the 60-day period described by Section 5.065;*

*(2) the purchaser fails to cure the default within the 60-day period described by Section 5.065; and*

*(3) Section 5.066 does not apply* [expiration of the following periods:

[(A) if the purchaser has paid less than 10 percent of the purchase price, 15 days after the date notice is given;

[(B) if the purchaser has paid 10 percent or more but less than 20 percent of the purchase price, 30 days after the date notice is given; and

[(C) if the purchaser has paid 20 percent or more of the purchase price, 60 days after the date notice is given].

Sec. *5.065* [*5.063*]. RIGHT TO CURE DEFAULT. Notwithstanding an agreement to the contrary, a purchaser in default under an executory contract for the conveyance of real property [used or to be used as the purchaser's residence] may[, at any time before expiration of the applicable period provided by Section 5.061 of this code,] avoid the enforcement of a remedy described by *Section 5.064* [that section] by complying with the terms of the contract *on or before the 60th day after the date notice is given under that section* [up to the date of compliance].

Sec. *5.066* [*5.101*]. EQUITY PROTECTION; SALE OF PROPERTY. (a) If a purchaser defaults after the purchaser has paid 40 percent or more of the amount due or the equivalent of 48 monthly payments under the executory contract, the seller is granted the power to sell, through a trustee designated by the seller, the purchaser's interest in the property as provided by this section. The seller may not enforce the remedy of rescission or of forfeiture and acceleration.

(b) The seller shall notify a purchaser of a default under the contract and allow the purchaser at least 60 days after the date notice is given to cure the default. The notice must be provided as prescribed by Section *5.063* [*5.062*] except that the notice must substitute the following statement:

### NOTICE

YOU ARE NOT COMPLYING WITH THE TERMS OF THE CONTRACT TO BUY YOUR PROPERTY. UNLESS YOU TAKE THE ACTION SPECIFIED IN THIS NOTICE BY (date) A TRUSTEE DESIGNATED BY THE SELLER HAS THE RIGHT TO SELL YOUR PROPERTY AT A PUBLIC AUCTION.

(c) The trustee or a substitute trustee designated by the seller must post, file, and serve a notice of sale and the county clerk shall record and maintain the notice of sale as prescribed by Section 51.002. A notice of sale is not valid unless it is given after the period to cure has expired.

(d) The trustee or a substitute trustee designated by the seller must conduct the sale as prescribed by Section 51.002. The seller must:

. *(1)* convey to a purchaser at a sale conducted under this section fee simple title to the real property; *and*

*(2) warrant that the property is free from any encumbrance..*

(e) The remaining balance of the amount due under the executory contract is the debt for purposes of a sale under this section. If the proceeds of the sale exceed the debt amount, the seller shall disburse the excess funds to the purchaser under the executory contract. If the proceeds of the sale are insufficient to extinguish the debt amount, the seller's right to recover the resulting deficiency is subject to Sections 51.003, 51.004, and 51.005 unless a provision of the executory contract releases the purchaser under the contract from liability.

(f) The affidavit of a person knowledgeable of the facts that states that the notice was given and the sale was conducted as provided by this section is prima facie evidence of those facts [in an action involving a bona fide purchaser at the sale or a subsequent bona fide purchaser for value if the purchaser under the executory contract is not in possession of the property and if the period to cure the default has expired]. A [bona fide] purchaser for value who relies on an

affidavit under this subsection acquires title to the property free and clear of the executory contract.

(g) If a purchaser defaults before the purchaser has paid 40 percent of the amount due or the equivalent of 48 monthly payments under the executory contract, the seller may enforce the remedy of rescission or of forfeiture and acceleration of the indebtedness if the seller complies with the notice requirements of Sections *5.063 and 5.064* [5.061 and 5.062].

Sec. *5.067* [5.064]. PLACEMENT OF LIEN FOR UTILITY SERVICE. Notwithstanding any terms of a contract to the contrary, the placement of a lien for the reasonable value of improvements to residential real estate for purposes of providing utility service to the property shall not constitute a default under the terms of an executory contract for the purchase of the real property.

Sec. *5.068* [5.093]. *FOREIGN* [SPANISH] LANGUAGE REQUIREMENT. If the negotiations that precede the execution of an executory contract are conducted primarily in *a language other than English* [Spanish], the seller shall provide a copy in *that language* [Spanish] of all written documents relating to the transaction, including the contract, disclosure *notices* [notice], [and] annual accounting statements, [required by this subchapter] and a notice of default required by *this subchapter* [Subchapter D].

Sec. *5.069* [5.094]. SELLER'S DISCLOSURE OF PROPERTY CONDITION. (a) Before an executory contract is signed by the purchaser, the seller shall provide the purchaser with:

(1) a survey, which was completed within the past year, or plat of a current survey of the real property;

(2) a legible copy of any document that describes an encumbrance or other claim, including a restrictive covenant or easement, that affects title to the real property; and

(3) a written notice, which must be attached to the contract, informing the purchaser of the condition of the property that must, at a minimum, be executed by the seller and purchaser and read substantially similar to the following:

WARNING

IF ANY OF THE ITEMS BELOW HAVE NOT BEEN CHECKED, YOU MAY NOT BE ABLE TO LIVE ON THE PROPERTY.

SELLER'S DISCLOSURE NOTICE

CONCERNING THE PROPERTY AT (street address or legal description and city) .
THIS DOCUMENT STATES CERTAIN APPLICABLE FACTS ABOUT THE *PROPERTY* [LAND] YOU ARE CONSIDERING PURCHASING.
CHECK ALL THE ITEMS THAT ARE APPLICABLE OR TRUE:
_____ The property is in a recorded subdivision.
_____ The property has water service that provides potable water.
_____ The property has sewer service.
_____ The property has been approved by the appropriate municipal, county, or state agency for installation of a septic system.
_____ The property has electric service.
_____ The property is not in a floodplain.
_____ The roads to the boundaries of the property are paved and maintained by:
_____ the seller;
_____ the owner of the property on which the road exists;
_____ the municipality;
_____ the county; or

_____ the state.

_____ No individual or entity other than the seller:

(1) owns the property;

(2) has a claim of ownership to the property; or

(3) has an interest in the property.

_____ No individual or entity has a lien filed against the property.

[_____ There are no back-taxes owed on the property.]

_____ There are no restrictive covenants, easements, or other title exceptions or encumbrances that prohibit construction of a house on the property.

## NOTICE: SELLER ADVISES PURCHASER TO:

(1) OBTAIN A TITLE ABSTRACT OR TITLE COMMITMENT COVERING THE PROPERTY AND HAVE THE ABSTRACT OR COMMITMENT REVIEWED BY AN ATTORNEY BEFORE SIGNING A CONTRACT OF THIS TYPE; AND

(2) PURCHASE AN OWNER'S POLICY OF TITLE INSURANCE COVERING THE PROPERTY.


_____          _____
(Date)                             (Signature of Seller)


_____          _____
(Date)                             (Signature of Purchaser)


(b) If the property is not located in a recorded subdivision, the seller shall provide the purchaser with a separate disclosure form stating that utilities may not be available to the property until the subdivision is recorded as required by law.

(c) If the seller advertises property for sale under an executory contract, the advertisement must disclose information regarding the availability of water, sewer, and electric service.

(d) The seller's failure to provide information required by this section:

(1) is a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code, and is actionable in a public or private suit brought under Subchapter E, Chapter 17, Business & Commerce Code; and

(2) entitles the purchaser to cancel and rescind the executory contract and receive a full refund of all payments made to the seller.

(e) Subsection (d) does not limit the purchaser's remedy against the seller for other false, misleading, or deceptive acts or practices actionable in a suit brought under Subchapter E, Chapter 17, Business & Commerce Code.

*Sec. 5.070. SELLER'S DISCLOSURE OF TAX PAYMENTS AND INSURANCE COVERAGE. (a) Before an executory contract is signed by the purchaser, the seller shall provide the purchaser with:*

*(1) a tax certificate from the collector for each taxing unit that collects taxes due on the property as provided by Section 31.08, Tax Code; and*

*(2) a legible copy of any insurance policy, binder, or other evidence relating to the property that indicates:*

*(A) the name of the insurer and the insured;*

*(B) a description of the property insured; and*

*(C) the amount for which the property is insured.*

*(b) The seller's failure to provide information required by this section:*

*(1) is a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code, and is actionable in a public or private suit brought under Subchapter E, Chapter 17, Business & Commerce Code; and*

*(2) entitles the purchaser to cancel and rescind the executory contract and receive a full refund of all payments made to the seller.*

*(c) Subsection (b) does not limit the purchaser's remedy against the seller for other false, misleading, or deceptive acts or practices actionable in a suit brought under Subchapter E, Chapter 17, Business & Commerce Code.*

Sec. *5.071* [5.095]. SELLER'S DISCLOSURE OF FINANCING TERMS. Before an executory contract is signed by the purchaser, the seller shall provide to the purchaser a written statement that specifies:

(1) the purchase price of the property;

(2) the interest rate charged under the contract;

(3) the dollar amount, or an estimate of the dollar amount if the interest rate is variable, of the interest charged for the term of the contract;

(4) the total amount of principal and interest to be paid under the contract; .

(5) the late charge, if any, that may be assessed under the contract; and

(6) the fact that the seller may not charge a prepayment penalty *or any similar fee* if the purchaser elects to pay the entire amount due under the contract before the scheduled payment date under the contract.

*Sec. 5.072. ORAL AGREEMENTS PROHIBITED. (a) An executory contract is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative.*

*(b) The rights and obligations of the parties to a contract are determined solely from the written contract, and any prior oral agreements between the parties are superseded by and merged into the contract.*

*(c) An executory contract may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the contract.*

*(d) The seller shall include in a separate document or in a provision of the contract a statement printed in 14-point boldfaced type or 14-point uppercase typewritten letters that reads substantially similar to the following:*

*THIS EXECUTORY CONTRACT REPRESENTS THE FINAL AGREEMENT BETWEEN THE SELLER AND PURCHASER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.*

_____  _____
*(Date)*          *(Signature of Seller)*

_____  _____
*(Date)*          *(Signature of Purchaser)*

*(e) The seller's failure to provide the notice required by this section:*

*(1) is a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code, and is actionable in a public or private suit brought under Subchapter E, Chapter 17, Business & Commerce Code; and*

*(2) entitles the purchaser to cancel and rescind the executory contract and receive a full refund of all payments made to the seller.*

*(f) Subsection (e) does not limit the purchaser's remedy against the seller for other false, misleading, or deceptive acts or practices actionable in a suit brought under Subchapter E, Chapter 17, Business & Commerce Code.*

Sec. 5.073 [5.096]. CONTRACT TERMS PROHIBITED. A seller may not include as a term of the executory contract a provision that:

(1) imposes an additional late-payment fee that exceeds the lesser of:

(A) eight percent of the monthly payment under the contract; or

(B) the actual administrative cost of processing the late payment;

(2) prohibits the purchaser from pledging the purchaser's interest in the property as security to obtain a loan to place improvements, including utility improvements or fire protection improvements, on the property; or

(3) imposes a prepayment penalty *or any similar fee* if the purchaser elects to pay the entire amount due under the contract before the scheduled payment date under the contract.

Sec. 5.074 [5.097]. PURCHASER'S RIGHT TO CANCEL CONTRACT WITHOUT CAUSE. (a) In addition to other rights or remedies provided by law, the purchaser may cancel and rescind an executory contract for any reason by sending by telegram or certified or registered mail, return receipt requested, or by delivering in person a signed, written notice of cancellation to the seller not later than the 14th day after the date of the contract.

(b) If the purchaser cancels the contract as provided by Subsection (a), the seller shall, not later than the 10th day after the date the seller receives the purchaser's notice of cancellation:

(1) return to the purchaser the executed contract and any property exchanged or payments made by the purchaser under the contract; and

(2) cancel any security interest arising out of the contract.

(c) The seller shall include in immediate proximity to the space reserved in the executory contract for the purchaser's signature a statement printed in 14-point boldface type or 14-point uppercase typewritten letters that reads substantially similar to the following:

YOU, THE PURCHASER, MAY CANCEL THIS CONTRACT AT ANY TIME DURING THE NEXT TWO WEEKS. THE DEADLINE FOR CANCELING THE CONTRACT IS (date). THE ATTACHED NOTICE OF CANCELLATION EXPLAINS THIS RIGHT.

(d) The seller shall provide a notice of cancellation form to the purchaser at the time the purchaser signs the executory contract that is printed in 14-point boldface type or 14-point uppercase typewritten letters und that reads substantially similar to the following:

## NOTICE OF CANCELLATION

(date of contract)

YOU MAY CANCEL THE EXECUTORY CONTRACT FOR ANY REASON WITHOUT ANY PENALTY OR OBLIGATION BY (date).

(1) YOU MUST SEND BY TELEGRAM OR CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, OR DELIVER IN PERSON A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE TO (Name of Seller) AT (Seller's Address) BY (date).

(2) THE SELLER SHALL, NOT LATER THAN THE 10TH DAY AFTER THE DATE THE SELLER RECEIVES YOUR CANCELLATION NOTICE:

(A) RETURN THE EXECUTED CONTRACT AND ANY PROPERTY EXCHANGED OR PAYMENTS MADE BY YOU UNDER THE CONTRACT; AND

(B) CANCEL ANY SECURITY INTEREST ARISING OUT OF THE CONTRACT. I ACKNOWLEDGE RECEIPT OF THIS NOTICE OF CANCELLATION FORM.

_____      _____

(Date)                                    (Purchaser's Signature)

I HEREBY CANCEL THIS CONTRACT.

_____          _____
(Date)                                    (Purchaser's Signature)

(e) The seller may not request the purchaser to sign a waiver of receipt of the notice of cancellation form required by this section.

Sec. 5.075 [5.098]. PURCHASER'S RIGHT TO PLEDGE INTEREST IN PROPERTY ON CONTRACTS ENTERED INTO BEFORE SEPTEMBER 1, 2001 [1995]. (a) On an executory contract entered into before September 1, 2001 [1995], a purchaser may pledge the interest in the property, which accrues pursuant to Section 5.066 [5.101], only to obtain a loan for improving the safety of the property or any improvements on the property.

(b) Loans that improve the safety of the property and improvements on the property include loans for:

(1) improving or connecting a residence to water service;

(2) improving or connecting a residence to a wastewater system;

(3) building or improving a septic system;

(4) structural improvements in the residence; and

(5) improved fire protection.

Sec. 5.076 [5.099]. RECORDING REQUIREMENTS. (a) Except as provided by Subsection (b), the seller shall record the executory contract, including the attached disclosure statement required by Section 5.069 [5.094], as prescribed by Title 3 _on or before the 30th day after the date the contract is executed._

(b) Section 12.002(c) does not apply to an executory contract filed for record under this section.

(c) If the executory contract is terminated for any reason, the seller shall record the instrument that terminates the contract.

(d) The county clerk shall collect the filing fee prescribed by Section 118.011, Local Government Code.

Sec. 5.077 [5.100]. ANNUAL ACCOUNTING STATEMENT. (a) The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract. If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

(b) The statement must include the following information:

(1) the amount paid under the contract;

(2) the remaining amount owed under the contract;

(3) the number of payments remaining under the contract; [and]

(4) the amounts paid to taxing authorities on the purchaser's behalf if collected by the seller;

_(5) the amounts paid to insure the property on the purchaser's behalf if collected by the seller;_

_(6) if the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and_

_(7) if the seller has changed insurance coverage, a legible copy of the current policy, binder, or other evidence that satisfies the requirements of Section 5.070(a)(2)._

(c) _A_ [If the] seller _who_ fails to comply with Subsection (a) _is liable to_[,] the purchaser _for_ [may]:

1326

(1) *liquidated damages in the amount of $250 a day for each day after January 31 that* [notify] the seller *fails to provide* [that] the purchaser *with* [has-not-received] the statement [and-will-deduct-15-percent-of-each-monthly-payment-due-until-the-statement-is-received]; and

(2) *reasonable attorney's fees* [not-earlier-than-the-25th-day-after-the-date-the-purchaser-provides-the-seller-notice-under-this-subsection, deduct-15-percent-of-each-monthly-payment due-until-the-statement-is-received-by-the-purchaser.

[(d)-A-purchaser-who-makes-a-deduction-under-Subsection-(c)-is-not-required-to-reimburse the-seller-for-the-amount-deducted].

*Sec. 5.078. DISPOSITION OF INSURANCE PROCEEDS. (a) The named insured under an insurance policy, binder, or other coverage relating to property subject to an executory contract for the conveyance of real property shall inform the insurer, not later than the 10th day after the date the coverage is obtained or the contract executed, whichever is later, of:*

*(1) the executory contract for conveyance and the term of the contract; and*

*(2) the name and address of the other party to the contract.*

*(b) An insurer who disburses proceeds under an insurance policy, binder, or other coverage relating to property that has been damaged shall issue the proceeds jointly to the purchaser and the seller designated in the contract.*

*(c) If proceeds under an insurance policy, binder, or other coverage are disbursed, the purchaser and seller shall ensure that the proceeds are used to repair, remedy, or improve the condition on the property.*

*(d) The failure of a seller or purchaser to comply with Subsection (c) is a false, misleading, or deceptive act or practice within the meaning of Section 17.46, Business & Commerce Code, and is actionable in a public or private suit brought under Subchapter E, Chapter 17, Business & Commerce Code.*

*(e) Subsection (d) does not limit either party's remedy for other false, misleading, or deceptive acts or practices actionable in a suit brought under Subchapter E, Chapter 17, Business & Commerce Code.*

Sec. *5.079* [5.102]. TITLE TRANSFER. (a) The seller shall transfer recorded, legal title of the property covered by the executory contract to the purchaser not later than the 30th day after the date the seller receives the purchaser's final payment due under the contract.

(b) A seller who violates Subsection (a) is *liable to the purchaser for* [subject-to-a-penalty-of]:

(1) *liquidated damages in the amount of:*

*(A)* $250 a day for each day the seller fails to transfer the title to the purchaser during the period that begins the 31st day and ends the 90th day after the date the seller receives the purchaser's final payment due under the contract; and

*(B)* [(2)] $500 a day for each day the seller fails to transfer title to the purchaser after the 90th day after the date the seller receives the purchaser's final payment due under the contract; *and*

(2) *reasonable attorney's fees.*

*(c) If a person to whom a seller's property interest passes by will or intestate succession is required to obtain a court order to clarify the person's status as an heir or to clarify the status of the seller or the property before the person may convey good and indefeasible title to the property, the court in which the action is pending may waive payment of the liquidated damages and attorney's fees under Subsection (b) if the court finds that the person is pursuing the action to establish good and indefeasible title with reasonable diligence.*

*(d)* [(c)] In this section, "seller" includes a successor, assignee, personal representative, executor, or administrator of the seller.

Sec. *5.080* [5.103]. LIABILITY FOR DISCLOSURES. For purposes of this subchapter, a disclosure required by this subchapter that is made by a seller's agent is a disclosure made by the seller.

SECTION 2. The following are repealed:

(1) the heading to Subchapter E, Chapter 5, Property Code; and

(2) Section 5.092, Property Code.

SECTION 3. (a) This Act takes effect September 1, 2001.

(b) The changes in law made by Sections 5.063, 5.064, 5.065, and 5.066, Property Code, as amended and redesignated by this Act, apply only to a purchaser who defaults under Subchapter D, Chapter 5, Property Code, as amended by this Act, on or after September 1, 2001, regardless of when the contract was entered into. A purchaser who is in default before September 1, 2001, is covered by the law in effect when the default occurred, and the former law is continued in effect for that purpose.

(c) The changes in law made by Sections 5.068 and 5.069, Property Code, as amended and redesignated by this Act, and Section 5.070, Property Code, as added by this Act, apply only to transactions involving executory contracts for conveyance for which negotiations begin on or after September 1, 2001. For purposes of this subsection, negotiations begin on the date an offer to enter into an executory contract for conveyance is made. Transactions involving executory contracts for conveyance for which negotiations begin before September 1, 2001, are covered by the law in effect when the negotiations began, and the former law is continued in effect for that purpose.

(d) The change in law made by the amendment of Section 5.091 and the repeal of Section 5.092, Property Code, by this Act and the application of Section 5.071, Property Code, as amended and redesignated by this Act, and Section 5.080, Property Code, as redesignated by this Act, applies only to transactions involving executory contracts for conveyance for which negotiations begin on or after September 1, 2001. For purposes of this subsection, negotiations begin on the date an offer to enter into an executory contract for conveyance is made.

(e) The change in law made by the amendment of Section 5.091 and the repeal of Section 5.092, Property Code, by this Act and the application of Section 5.072, Property Code, as added by this Act, Section 5.074, Property Code, as redesignated by this Act, and Sections 5.073 and 5.076, Property Code, as amended and redesignated by this Act, applies only to a contract entered into on or after September 1, 2001.

(f) The change in law made by the amendment of Section 5.091 and the repeal of Section 5.092, Property Code, by this Act and the application of Section 5.075, Property Code, as amended and redesignated by this Act, applies to a purchaser on or after September 1, 2001, who accrues interest as provided by that section regardless of when the interest accrued.

(g) The changes in law made by the amendment of Section 5.091 and the repeal of Section 5.092, Property Code, by this Act and the application of Subsections (a) and (b), Section 5.077, Property Code, as amended and redesignated by this Act, and Subsection (a), Section 5.079, Property Code, as redesignated by this Act, apply to an executory contract on or after September 1, 2001, regardless of when the contract was entered into.

(h) The change in law made by Subsection (c), Section 5.077, and Subsection (b), Section 5.079, Property Code, as amended and redesignated by this Act, applies only to a violation that occurs on or after September 1, 2001. A violation that occurs before September 1, 2001, is covered by the law in effect when the violation occurred, and the former law is continued in effect for that purpose.

(i) The change in law made by Section 5.078, Property Code, as added by this Act, applies to an executory contract regardless of when the contract was entered into. A named insured who currently holds an insurance policy binder or other coverage relating to property subject to an executory contract shall notify the insurer as provided by Subsection (a), Section 5.078, Property Code, not later than January 1, 2002.

Passed the Senate on February 22, 2001, by a viva-voce vote; and that the Senate concurred in House amendment on May 18, 2001, by a viva-voce vote; passed the House, with amendment, on May 11, 2001, by a non-record vote.

Approved June 13, 2001.

Effective September 1, 2001.

---

# CHAPTER 694

## S.B. No. 200

### AN ACT

relating to state and regional coordination of planning and development for implementation of state programs.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 391.009, Local Government Code, is amended by adding Subsection (c) to read as follows:

*(c) In carrying out their planning and program development responsibilities, state agencies shall, to the greatest extent feasible, coordinate planning with commissions to ensure effective and orderly implementation of state programs at the regional level.*

SECTION 2. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2001.

Passed the Senate on February 21, 2001: Yeas 30, Nays 0, one present, not voting; passed the House on May 23, 2001: Yeas 145, Nays 0, two present, not voting.

Approved June 13, 2001.

Effective June 13, 2001.

---

# CHAPTER 695

## S.B. No. 252

### AN ACT

relating to notice of the appointment of a receiver in a suit for dissolution of a marriage.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 6.502, Family Code, is amended to read as follows:

Sec. 6.502. TEMPORARY INJUNCTION AND OTHER TEMPORARY ORDERS. *(a)* While a suit for dissolution of a marriage is pending and on the motion of a party or on the court's own motion after notice and hearing, the court may render an appropriate order, including the granting of 'a temporary injunction for the preservation of the property and protection of the parties as deemed necessary and equitable and including an order directed to one or both parties:

(1) requiring a sworn inventory and appraisement of the real and personal property owned or claimed by the parties and specifying the form, manner, and substance of the inventory and appraisal and list of debts and liabilities;

(2) requiring payments to be made for the support of either spouse;

(3) requiring the production of books, papers, documents, and tangible things by a party;

(4) ordering payment of reasonable attorney's fees and expenses;